In Equity.

MARY W. HOUGHTON *vs.* GEORGE E. HUGHES, Trustee.

Sagadahoc.    Opinion May 24, 1911.

*Wills.    Construction.    Trust Estates.    Technical Words.    " Heirs at Law."*
*Statute 1895, chapter 157.*

A testator gave property in trust for payment of the net income to a son for
life, the principal to go to the son's heirs at law at his death. *Held*, that
the principal formed no part of the son's estate; the gift thereof to his
heirs being substantive and not substitutional.

A will is to be interpreted according to the laws of the country or state of
the domicile of the testator, since he is supposed to have been conversant
with those laws.

Where a testator has used technical words or expressions, he is presumed to
have used them in the sense that has been ascribed to them by usage and
sanctioned by judicial decisions, unless a clear intention to use them in
another sense is apparent from the context.

Where there was a gift by a testator to his son's " heirs at law " under a will
executed before the statute of 1885, chapter 157, establishing a widow's
right by descent in her deceased husband's real estate, took effect, *held*
that the son's widow was not included as one of " his heirs at law."

In equity.    On report.    Bill dismissed.

Bill in equity praying for the construction of the fourth item of
the last will and testament of Levi W. Houghton, deceased testate.
The defendant filed an answer with a demurrer therein inserted.
When the cause came on for hearing an agreed statement of facts
was filed and the case reported to the Law Court for determination.

The case is stated in the opinion.

*Edward C. Plummer*, for plaintiff.

*George E. Hughes*, for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, KING, BIRD, JJ.

KING, J.    Bill in equity reported to the Law Court on an agreed statement of facts.

The question presented in this case involves the construction of the fourth item of the will of Levi W. Houghton, which reads as follows:

"Item Fourth: I give, devise and bequeath all the residue and remainder of my property of every name and nature, real, personal or mixed, and wherever situate, unto my children as follows, to wit: to Frank P. Houghton, Sarah Virginia Hall, and Ernestine A. Payne each his or her distributive share of said estate, as determined by the laws of inheritance of the State of Maine, and to Francis Adams, of said Bath, the proportional shares that would go to my two sons, Henry W. Houghton and James M. Houghton, in trust, to hold, manage and control the same according to his, the said Adams' best skill and judgment, paying to said Henry W. and the said James M., quarterly, the net income of his individual share so held in trust, during the term of his natural life, and at his death the principal to go to his heirs at law, and in case the income from the share of either Henry W. or James M. should not equal to their reasonable wants and necessities then I direct that said trustee may annually allow to each a sum not exceeding two hundred and fifty dollars from the principal."

The testator was a citizen of Bath, Maine, at the time the will was executed, January 27, 1895, and died there December 13, 1895. The defendant was appointed and qualified as trustee of the share of Henry W. Houghton in the place of Francis Adams named in the will and is still acting in that capacity. At the time the will was executed the son, Henry W., was a citizen of Boston, Massachusetts, where he continued to reside up to the time of his death, May 16, 1910. He never had any children, but some years prior to the making of his father's will married the plaintiff who survives him as his widow. He died testate, and by the terms of his will duly probated in said Boston the plaintiff is his sole legatee.

I.  The plaintiff appears to claim in her bill that under item
fourth of the will of Levi W. Houghton, above quoted, Henry W.
Houghton took an equitable fee in the corpus of one-fifth of the
residue of the estate, the same being put in trust merely to limit the
son to the enjoyment during his lifetime of the net income thereof,
with an additional allowance from the principal, annually, not
exceeding $250, in the discretion of the trustee, and that at the
death of Henry W. the trust terminated and the residue of the
principal became a part of the estate of Henry W.  This claim we
think is not maintainable.  The language of the will is explicit,
and its meaning clear.  There is no absolute gift of a share of the
estate to Henry W.  It was given to the trustee, in the first instance,
and the son was to have only the net income thereof during his life,
and at his death the principal was "to go to his heirs at law."
Henry W. Houghton took under the will only a life estate in the
income of the one-fifth share of the residue.  *Bradbury* v. *Jackson*,
97 Maine, 449, 460.  The heirs at law of Henry W. were not to.
take the principal of the trust fund at his death by substitution for
him, but as persons designated in the will to take in their own right
something which he was in no event to take.  The gift of the
principal to them was a substantive gift, and not a substitutional
one.  They take by force of the will as purchasers.  *Clarke* v.
*Cordis*, 4 Allen, 466, 480.

II.  But the chief contention of the plaintiff, as stated in the
brief of counsel, is, that as widow of Henry W. Houghton, who
died without issue, she is entitled to one-half of the balance of the
principal of the trust fund as an heir at law of her deceased
husband.  It has been argued, that the determination of the
question whether the plaintiff is an heir at law of her husband
should be made according to the laws of Massachusetts, the place of
residence of Henry W. Houghton.  The real question is, what
meaning should be given to the words "his heirs at law" as used by
the testator, Levi W. Houghton?  In what sense did he employ
those words?  The general rule, both as to wills of personalty and
realty, seems to be that a will is to be interpreted according to the
laws of the country or state of the domicil of the testator, since he is

supposed to have been conversant with those laws. In *Harrison* v. *Nixon*, 9 Pet. (U. S.) 483, Story J., in considering the meaning of the words, "heir at law" in the leading bequest of a will said :

"The language of wills is not of universal interpretation, having the same precise import in all countries and under all circumstances. They are supposed to speak the sense of the testator according to the received laws or usages of the country where he is domiciled, by a sort of tacit reference, unless there is something in the language which repels or controls such a conclusion." See also Schouler on Wills, 2nd Ed. sec. 469. The case of *Lincoln* v. *Perry*, 149 Mass. 368, 373, is directly in point on this question. In that case the testator provided that a share of his estate which he gave to Judith Perry for her life should, at her death, go to "her heirs at law." The testator was domiciled in Massachusetts at the time the will was made and thenceforth until he died. It was contended that the term "heirs at law" should be interpreted according to the laws of New Hampshire, the residence of Judith at the time of her death. The court held otherwise, saying : "But the question after all is, what is the meaning of the testator's words? and we are brought to the conclusion that the true meaning is to designate a set of persons who were to take the estate upon Judith's death, and that those persons are styled her heirs at law. This set of persons would not fluctuate with any changes of residence that she might make. The testator would probably not be familiar with the laws of different States. He lived here, his will was drawn here by a Massachusetts lawyer, and it was executed here. The laws of Massachusetts are those with which presumably he would be best acquainted. . . . . In speaking of heirs at law, he probably meant those who would be heirs at law here." The language of the Massachusetts court is precisely applicable to the case now before us. Levi W. Houghton lived and died in Maine. His will was made and executed in Maine. It is not probable that he was familiar with the laws of any other State, but he is presumed to know the laws of Maine, and it should be assumed, we think, that he used the words "heirs at law" in his will in the sense which those words then had according to the laws of the State of Maine,

and as judicially construed by the courts of Maine, there being nothing in the language used which repels or controls such conclusion.

Where a testator has used technical words or expressions he is presumed to have used them in the sense that has been ascribed to them by usage, and sanctioned by judicial decisions, unless a clear intention to use them in another sense is apparent from the context. The term "heirs at law" had a well recognized significance according to the laws of this State at the time the testator made his will, January 27, 1895. Many years previous this court had declared that a widow was not an heir of her deceased husband, *Lord* v. *Bourne*, 63 Maine, 368. And the learned counsel for the plaintiff in his brief says: "Prior to the law of 1895 it is evident that the Maine widow was not an heir at law" of her deceased husband, "but now" he continues "it is respectfully submitted that she is an heir even under the definitions of those old decisions." But the plaintiff seems to have lost sight of the important consideration that even if it were held, under the law of 1895, which established the widow's right by descent in her husband's real estate, that the widow is now an heir of her deceased husband, contra to the view expressed in *Golder* v. *Golder*, 95 Maine, 259, and *Herrick* v. *Low*, 103 Maine, 353, such conclusion could have no application to the question here presented. The law of 1895 was approved March 26, 1895, and did not take effect as to persons then married till January first, 1897. Accordingly when the will of Levi W. Houghton was executed, the law of 1895 had not been enacted, and at the time of his death, December 13, 1895, that law was not in force except as to persons married after May first, 1895.

It will, therefore, be seen that the question now before us is not, whether the term heirs at law used in a will made since the law of 1895 was enacted and in force might not have been used by the testator to include the widow of the person whose heirs at law are referred to, but the question here is, whether the words "heirs at law" used in the will of Levi W. Houghton, which was made before the law of 1895 was passed, and when, according to usage and the judicial decisions of this State, a widow was not an heir of her

deceased husband, should be interpreted to include the widow. There is nothing in the language of the will indicating that this testator did not use the expression "his heirs at law" according to its then recognized and defined import, and as not including the widow of his son.

The court is, therefore, constrained to the conclusion that the term "heirs at law" used by the testator in the fourth item of his will to designate those who were to take the principal of the trust property at the death of his son Henry W., must be interpreted as used with the effect and meaning then ascribed to it under the laws of this State, and as judicially defined, with which he is presumed to have been familiar.

Accordingly it is the opinion of the court that the plaintiff, as the widow of Henry W. Houghton, is not entitled to share in the property now held in trust by the defendant under the provisions of the fourth item of said will and which at the death of Henry W. Houghton was "to go to his heirs at law."

The entry must, therefore, be that the relief asked for by the plaintiff is denied, and the bill is dismissed.

*So ordered.*