BROWN and others, Respondents, vs. HIGGINS and others, Appellants.

*March 6—April 3, 1923.*

*Wills: Construction: When remainder vests: As of time of testator's death or of termination of intermediate estate.*

1. A devise of a life estate to F. with remainder to his heirs, and if he die without heirs "then . . . to my own heirs at law," vests the remainder in testator's heirs at the time of his death, and not in his heirs at the time of the death of the devisee; the word "then" being not used as an adverb of time, but as an equivalent of the expression "in that case," and sec. 2037, Stats., expressly providing that future estates shall vest when there is a person in being at the death of testator who would have an immediate right to the possession of the lands devised upon the ceasing of the intermediate or preceding estate.

2. The law favors an early vesting of title, and there must be a reasonably clear intention to the contrary read out of the will in order to postpone such vesting.

3. The testator used the words "my sons and daughters" in one part of the will and in another part used the words "my own heirs at law;" but since, technically, the two expressions mean exactly the same thing, the testator could use either without raising a presumption that he used one to indicate something different from the other.

APPEAL from an order of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge. *Affirmed.*

This is an action of partition. The appeal is from an order determining the rights of the parties. All parties claim under the will of Fitch A. Higgins, deceased, which disposed of the land in question as follows:

"Item 3d. To my son Frederick F. Higgins I give and bequeath the use of the farm on which he now resides for and during the period of his natural life, which farm is described as [here follows description]. And I further give and devise to my son Frederick on the marriage or death of his mother, my said wife, the use of said homestead farm for and during the period of his natural life. And in the event of the said Frederick's having an heir or heirs, then on the death of the said Frederick I give and devise all of said lands herein described to him or them and their heirs and assigns forever. But in the event of the said Frederick's dying without leaving any legal heir or heirs, then I hereby devise and bequeath said lands, each and every of them, to my own heirs at law, to have and to hold the same unto them and their heirs and assigns forever."

The will was made in 1878. The testator died in 1882, leaving his widow and seven children. All the children except Charles T. Higgins gave quitclaim deeds to the lands in question to Frederick F. Higgins, the life tenant. These deeds were duly recorded, and Frederick F. Higgins claimed to own and occupy the premises under the will of the testator, and under the deeds so given, until about the year 1907. At that time he and his brother, Charles T. Higgins, and their wives, brought an action in the circuit court for Ke-

nosha county against all of the heirs of Fitch A. Higgins, deceased, known, unknown, and unborn, to quiet the title in said plaintiffs as against all of said defendants. All of the defendants were served either personally or by publication of summons. Many of the defendants entered their appearances and disclaimed any interest in the property. Many of the others did not appear. In due time, and after hearing, which was practically uncontested, the court made and filed findings of fact and conclusions of law wherein the title to the premises was adjudged to be in the plaintiffs free and clear of all claims of the defendants, six sevenths in Frederick F. Higgins and one seventh in Charles T. Higgins, subject, however, to be divested on birth of issue to Frederick F. Higgins.

The plaintiffs in this action claim title to six sevenths of the land in question under mesne conveyances from Frederick F. Higgins. Frederick F. Higgins died in the year 1921 without leaving any heir or heirs. The plaintiffs, who were in possession of the property, brought this action for partition shortly after Frederick's death. They claim to be owners of a six-sevenths interest in the property and claim that the other one seventh is owned by *Malesta Higgins,* who acquired the same under the will of Charles T. Higgins, her husband, the heir of Fitch A. Higgins, who did not convey his interest to his brother Frederick. The circuit court adopted plaintiffs' view and made an order so determining the interests of the parties. The appeal is from that order.

*Geo. W. Taylor* of Kenosha, for the appellants.

For the respondents there was a brief by *William D. Thompson* of Racine, attorney, and *Charles H. Jackson* of Chicago, of counsel, and oral argument by *Mr. Thompson.*

OWEN, J. The judgment of the lower court was rested on the proposition that the judgment in the action to quiet title commenced in 1907 was conclusive and binding upon the appellants. Of the appellants here only *Malesta Higgins*

was a party to that action. As to her it is no doubt conclusive. The other appellants are sons and daughters of the children of Fitch Higgins who were living at the time of his death. They were not parties to the action to quiet title, except as unknown heirs. Respondents contend that they were, nevertheless, represented in that action by their ancestors, who were parties thereto, and are concluded by the judgment entered therein upon the principle applied in *Ruggles v. Tyson,* 104 Wis. 500, 81 N. W. 367, and *Perkins v. Burlington L. & I. Co.* 112 Wis. 509, 88 N. W. 648. If the construction which the judgment in that action placed upon that provision of the will of Fitch Higgins, here involved, was correct, it will be unnecessary to consider whether the former judgment was binding upon the appellants here who were not parties to that action.

After giving a life estate in the lands to Frederick F. Higgins the will provides:

"And in the event of the said Frederick's having an heir or heirs, then on the death of the said Frederick I give and devise all of said lands herein described to him or them and their heirs and assigns forever. But in the event of the said Frederick's dying without leaving any legal heir or heirs, then I hereby devise and bequeath said lands, each and every of them, to my own heirs at law, to have and to hold the same unto them and their heirs and assigns forever."

Frederick died without leaving heirs, and the question is, Who took the remainder at the termination of Frederick's life estate? Appellants claim that those who were the heirs of Fitch A. Higgins at the death of Frederick, while respondents contend that those who were the heirs of Fitch A. Higgins at the time of his death, took the remainder, title thereto vesting in such heirs at the time of his death, subject to be divested if Frederick died leaving heirs.

Sec. 2037, Stats., provides that future estates in land are vested when there is a person in being who would have an immediate right to the possession of the lands upon the

ceasing of the intermediate or preceding estate. Technically and correctly the word "heirs" means those qualified to take at testator's death. *Flint v. Wis. T. Co.* 151 Wis. 231, 138 N. W. 629. The law favors an early vesting of title, and there must be a reasonably clear intention to the contrary read out of the will in order to postpone it. *West v. Andrews,* 166 Wis. 509, 166 N. W. 31. The construction which the circuit court placed upon the will in the action to quiet title is in harmony with these principles. Immediately upon the death of Fitch Higgins there were persons in being who had an immediate right to the possession of the lands upon the ceasing of the life estate of Frederick. Under such circumstances sec. 2037 specifically provides that the estate shall be vested.

Counsel for appellants does not seriously controvert any of these propositions but seeks to avoid the consequences of their application by invoking the principle that all rules for the construction of wills are subordinate to the primary canon that the intent of the testator, as gathered from the whole will, must be given effect. He contends that the expression, "then I hereby devise and bequeath said lands, each and every of them, to my own heirs at law, to have and to hold the same unto them and their heirs and assigns forever," are not words of present grant, but amount to a direction that the premises shall be divided among those who may be his heirs at the time of Frederick's death. His argument is that the word "then" is an adverb of time and that its use indicates an intention of the grantor to postpone the grant until Frederick's death. Whether the words of devise are words of a present grant or a mere direction for division at a future date is often of much significance in determining when a future estate vests, and if by the use of the phrase under consideration the testator intended to postpone the grant until Frederick's death, there would be much to appellants' contention. However, we do not think the word "then" was used in this connection as an adverb

of time, but was rather used in the sense of "in that case," so that the words of the devise are words of a present grant and not a direction for a division at a future date.

Appellants also argue that it is apparent from other parts of the will that the phrase "my own heirs at law," in the sentence of the will under consideration, did not mean the sons and daughters living at the time of testator's death, because, in another portion of the will, after directing his executors to pay to his son Frederick a certain amount in ten equal annual payments, he provides: "And in case my said son Frederick F. Higgins should die without issue previous to the expiration of ten years from and after my decease, then I give and bequeath two thirds of the balance to my sons and daughters share and share alike, their heirs and assigns forever." The argument is made that when the testator meant "sons and daughters" he distinctly so stated, and that the use of such expression in other parts of his will indicates that the expression "my own heirs at law" was used to denote other persons or another class of persons. Technically the two expressions mean exactly the same thing, and if they mean the same thing there is no reason why the testator might not have used either expression without raising a presumption that he used one to indicate something different from the other. We think the construction contended for by appellants is unwarranted. We think it clear that upon the death of Fitch Higgins the future estate vested in his then heirs and that the appellants here took nothing under that will. It follows that they have no interest in the premises and that the order determining the rights of the parties cannot be disturbed upon their appeal.

*By the Court.*—Order affirmed.