# Peterson's Estate.

*Wills—Construction—Devise of property "free from any trust"—Stock deposited with voting trust—Date when will is operative—Residue.*

1. The rule that a will speaks as though executed immediately before the death of the testator, relates to the effect and operation of the instrument, rather than to its construction; as regards the intention of the testator, the will is to be construed as of the date of the execution. Where it appears in the will that the testator intended it to be confined to the state of affairs existing when it was made, the construction must be such as to conform to such intention.

2. The fact that there is a residuary clause can not in any wise limit or detract from what has been previously given in the will; nor can such residuary clause have the effect of putting a construction on a previous clause of the will in order to create a residue.

3. Testatrix by will provided: "Whereas, I am the owner of certain property and estate which I hold in my own right free from any trust, now I hereby give, devise and bequeath the same to my husband, A., absolutely." At the date of the execution of her will, she was the owner of certain property in her own right, and was the beneficiary of certain trust estates left by her father and mother, of which she enjoyed the income and over which she had a power of appointment, but with no other control of the fund. The estate left in trust for her by her father consisted of stock of a steel company which was continued as an investment by the trustees, under directions given by their testator. The business of the steel works was very profitable, and subsequent to the execution of the will of testatrix, there were large accumulated undivided profits, which were strictly income, the distribution of which could have been enforced at any time by those entitled to receive it. By agreement made between the various parties interested, including testatrix, it was provided that these undivided profits should be left in the custody of the corporation, should be capitalized and additional stock should be issued and distributed to stockholders in lieu thereof. Testatrix, in assenting to this arrangement, signed an agreement providing for the transfer of her shares of additional stock to voting trustees, to be held and voted by them for a period of ten years, in the interest of the continuance of the policy of the corporation, which had been approved by her father. Upon a contest arising after the death of testatrix, to ascertain

whether the above bequest to her husband included the shares of stock vested in the voting trustees as aforesaid: *Held,* that they were so included; that the words "free from any trust" are to be construed as of the date of the execution of the will, and not as of the date immediately preceding the death of the testatrix, and so construed do not include within their meaning stock subsequently transferred to the voting trustees, and that this conclusion was not changed by the fact that a residuary estate is mentioned in the will, and that there would be no residuary estate unless the stock held by the voting trustees was held to be excluded from the gift to the husband.

Argued April 4, 1913. Appeals, Nos. 93 and 94, Jan. T., 1913, of Richard Hayden and George R. Hayden, from decree of O. C., Philadelphia Co., Oct. T., 1912, No. 172, dismissing exceptions to adjudication in Estate of Georgiana Harrah Peterson, deceased. Before BROWN, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Exceptions to adjudication of GEST, J.
The opinion of the Supreme Court states the facts.

*Error assigned* was in dismissing the exceptions to the adjudication.

*Lewis Lawrence Smith,* for Richard Hayden.—The actual intention of the testatrix at the date of her will is not material: Roney v. Stiltz, 5 Wharton 381; Fidelity Ins., Trust & Safe Deposit Company's App., 108 Pa. 492; Williams v. Brice, 201 Pa. 595.

Where the language is clear it is inadmissible to speculate as to the intention: Wood v. Schoen, 216 Pa. 425; Baker's Appeal, 115 Pa. 590; VanLeer v. VanLeer, 221 Pa. 195.

Every part of a will must be given effect, and, of course, the residuary clause as well: Wood v. Schoen, 216 Pa. 425; Fuller's Est., 225 Pa. 626; Board of Missions' App., 91 Pa. 507; Hunter's Estate, 6 Pa. 97.

*John G. Johnson,* with him *L. Stauffer Oliver* and *A. S. Weill,* for George R. Hayden.—The will is to be construed as if made immediately before the death of the testatrix: McKinley v. Martin, 226 Pa. 550.

The actual intention at the date of the will is not the material question: Boney v. Stiltz, 5 Whart. 381; Fidelity Ins., Trust & Safe Deposit Company's App., 108 Pa. 492; Garrison v. Garrison, 29 N. J. Law 153; Matter of Hendrickson, 140 N. Y. App. Div. 388.

All or no part of item third must be construed as of the date of testatrix's death: Garrison v. Garrison, 29 N. J. Law 153.

Where the language is plain, no canons of construction are applicable: Todd v. Armstrong, 213 Pa. 570; Line's Est., 221 Pa. 374; Wood v. Schoen, 216 Pa. 425; Freeman's Est., 220 Pa. 343; Norris's Est., 217 Pa. 548.

When language is plain, the court has no right to look into the state of testatrix's property, etc., as of the date of the will: Baker's App., 115 Pa. 590; Sponsler's App., 107 Pa. 95; VanLeer v. VanLeer, 221 Pa. 195.

The stock must pass under the residuary clause: Wood v. Schoen, 216 Pa. 425; Com. v. Hackett, 102 Pa. 505; Hardenbergh v. Ray, 151 U. S. 112.

*Hampton L. Carson,* with him *Joseph Carson,* for appellee, cited: Line's Est., 221 Pa. 374; Baker's App., 115 Pa. 590; Hunter's Est., 6 Pa. 97; France's Est., 75 Pa. 220; Ivins's App., 106 Pa. 176; Porter's App., 94 Pa. 332; Postlethwaite's App., 68 Pa. 477.

OPINION BY MR. JUSTICE STEWART, October 13, 1913:

We have here two appeals from the same decree involving precisely the same question. We shall consider them together.

The particular clause in the will of the testatrix which gives rise to the present controversy reads as follows:

"Whereas, I am the owner of certain property and estate which I hold in my own right free from any trust,

Now I hereby give, devise and bequeath the same to my husband, Arthur Peterson, absolutely."

Charles J. Harrah, the father of Mrs. Georgiana Harrah Peterson, here the testatrix, whose estate is now being distributed, by his last will bequeathed to trustees, who were also executors of his will, the sum of $250,000, in trust, to pay the income thereof to his said daughter Georgiana during her natural life, and at her death to pay the principal sum as she, the said Georgiana, should by her last will direct. Charles J. Harrah's estate consisted largely of holdings in the Midvale Steel Works. Out of a total issue of seventy-five hundred shares of capital stock of this corporation he was the owner of thirty-three hundred shares, of appraised value of $198.68 per share. Under the advice and recommendation, if not direction, contained in the will, the investment in this stock was continued by the trustees. We are here concerned only with so much of it as represented the $250,000 bequeathed in trust as aforesaid. The stock representing this particular interest was not earmarked or individuated so as to distinguish it in the general holdings, but the number of shares necessary to meet the requirements of the trust was fixed by the appraised value of the stock; and this amount of stock remaining in the hands of the executors, acting as trustees, was impressed quite as securely and certainly with the trust as though it had been passed from the executors to the trustees by formal transfer. As to the income derived therefrom, Mrs. Peterson as cestui que trust was entitled to receive it; but, saving her power of appointment, she had no control over the fund; she did not hold that "in her own right free from any trust." In the years succeeding the death of Mr. Harrah, the business of the Midvale Steel Works became so enormously profitable, that by 1910 the accumulated undivided profits of the concern largely exceeded the entire capitalization of the corporation. These earnings were income pure and simple; the fact

that they were allowed to accumulate instead of being regularly distributed did not change their character in this regard. Being income, and so far in excess of the reasonable and legitimate requirements of the business of the corporation that its distribution could have been enforced at any time by those entitled to receive it, their permitting it to accumulate was on their part the assertion of ownership. Mrs. Peterson was the undoubted owner in her own right of a share in these accumulations in the proportion that the 250 shares of stock in the trust fund stood to the whole issue of stock. This was hers to do with as she pleased; it was free from any trust; leaving it in the corporation was her own act, and the corporation thereupon became her debtor to that extent. The trustees stood in no relation to it; they had virtually paid it over to her, since it was by her acquiescence and consent that it was left in the custody and employment of the corporation. That such was the understanding of the parties finds the fullest confirmation in the fact that in December, 1909, when it was proposed by the directors to capitalize the surplus earnings of the Midvale Steel Works by the issue of additional shares of stock to the amount which would give twelve new shares for each original share, the executors submitted by letter the proposal to Mrs. Peterson, with recommendation of its acceptance upon the terms indicated, one of which required an assignment from her to the executors or their representatives, in voting trust, of the stock which would be allotted to her under the increase. This was followed by the agreement of February 1, 1910, in which all parties interested in the stock under the will of Charles J. Harrah, including Mrs. Peterson, in which it is declared that "to the end, inter alia, of aiding in the accomplishing the purposes and intent of the testator, and carrying out the directions of his will, that the estate's entire share of the capital of Midvale Steel Company shall be maintained intact until the control of said company can be advantageously sold

in accordance with said directions—the several parties hereto (specifically naming them and including Mrs. Peterson) have assigned, transferred and set over, and by these presents do assign, transfer and set over, unto executors and the survivors of them, their, the said trustees and the said Heirs' respective interests in all of said 39600 shares of capital stock of Midvale Steel Works so to be issued, and as and when issued and every part thereof."

So completely had this income been divorced from the trust by the course of business adopted by the parties with respect to it, that had Mrs. Peterson's death occurred immediately prior to the date of the agreement, there can be little question that under this third item of her will above recited, the testatrix's share in the accumulated income from the stock which had been placed in trust would have passed. No property right with respect to this income was ever in the trustees; theirs was a legal duty, founded on a personal confidence, to pay it over to the cestui que trust who for all purposes is to be regarded as the real owner. Assuming, then, this to have been the situation before the agreement was entered into, it is not pretended that anything thereafter occurred to change it, except that a year and a half before her death, which occurred 19th September, 1911, Mrs. Peterson became a party to the agreement above referred to, whereby all those having interest in the Midvale Steel Works stock derived from Charles J. Harrah, assigned all their interest in the 39600 shares of the proposed new issue of stock, as and when issued, to the executors of Charles J. Harrah, in trust, to have, and hold and vote the same for a period of ten years, or such part of said term as in the judgment of the executors it might be necessary to hold the same until the control of Midvale Steel Works can be advantageously sold; and in further trust to collect the dividends and sell the stock at such time as the control of the company may be advantageously sold in accordance with certain pre-

scribed terms at a price to be determined by the execu-
tors and Charles J. Harrah, Jr., also a party to the
agreement, and whose individual holding of stock sup-
plementing that of the Harrah estate, made a majority
holding which secured a control of the company,—and
in further trust at the end of said period, if no sale
of the stock be made within the period, to transfer and
distribute the stock to the parties entitled as provided
in a schedule which awarded to Mrs. Peterson as her in-
terest fifty-five hundred shares.

The contention on behalf of the appellant is that what-
ever may have been the legal status of these earnings
prior to this agreement, now that they were represented
by shares in the capital stock which had been assigned
to trustees, who held the legal title to them at the time
of Mrs. Peterson's death, they did not pass under the
above-recited bequest to her husband, the appellee, inas-
much as they were not then property and estate which
testatrix held "in her own right free from any trust."
In what we have said our purpose was to show that the
earnings and income of the stock representing the in-
vestment of the $250,000 bequeathed in trust by Charles
J. Harrah, the father, in whatever shape they were, be-
longed to Mrs. Peterson in her own right. That they
continued to be property held by her in her own right
under the assignment of the shares to the executors to
hold in trust, is not to be questioned. Admitting the
binding effect of the agreement, Mrs. Peterson had the
sole beneficial interest in the shares, and, subject to
conditions which she herself had imposed for a definite
period, she was free to do with them as she pleased.
Had the subject of the bequest been indicated or de-
scribed by no other words than those which refer to it
as "property and estate which I hold in my own right,"
there would have been little room for dispute as to what
was included; it is the added expression, "free from
any trust," which, because it may be understood as lim-
iting and qualifying the words which immediately pre-

cede, or as explanatory and descriptive by way of distinguishing between the two classes of property over which she had power of disposition, one her own, and the other, property over which she had power of appointment, that gives rise to the contention. If the words are to be construed as qualifying and limiting the gift to the husband of all the property that testatrix held in her own right, and the will is to be construed as speaking from a date immediately preceding the death of the testatrix, it would follow that the shares of stock held by the executors under the agreement—the subject of the present dispute—would not be included in the gift, inasmuch as it could not be affirmed of the stock that at that time it was "free from any trust." This brings us to the determining question in the case: from what period does this will speak? Appellant here invokes the rule of construction which obtained at common law and which is now a legislative regulation as well, that wills, with reference to the estates comprised in them, are to be construed as though executed immediately before the death of the testator, unless a contrary intention shall appear by the will. We have above indicated what there is in this will so far ambiguous as to call for consideration of the words employed. Such construction involves the further inquiry, whether the testatrix in using the words "free from any trust," intended thereby to limit and restrict the gift to the husband which without them would have included all the property and estate which she owned in her own right; or whether she used them merely to mark the distinction as to her right to disposition between the property which she herself owned and that which belonged to others but as to which she had the power of testamentary appointment. If the former, then a clear implication would result that she used "trusts" in a wide generic sense which would embrace every kind and description of trusts no matter how created, for what purpose, or for what period of duration. Except as she did so use it, the bequest was

not one which might be increased or diminished, but was measured by conditions existing when the will was executed. If she used the words in the latter sense, the will must speak from its date of execution, otherwise the effect of the application of the rule would be to strike down the estate which the husband would otherwise have taken, a result never intended, as is distinctly declared in Neale's App., 104 Pa. 214. The doctrine of the case just cited agrees with that which now generally prevails, to the effect that the rule making a will to speak as though executed immediately before the death of the testator, relates to the effect and operation of the instrument rather than to its construction, and, as regards the intention of the testator, the will is to be construed as of the date of the execution. Another way of stating the rule is, that where it appears in the will that a testator intended the will to be confined to the state of affairs existing when the will was made, the construction must be such as to conform to such intention. Examining this will then from what appears within its four corners, we find this solution. Under the wills of both her father and mother the testatrix had the power to appoint to whom the corpus of large bequests, of which she was to receive the income merely during life, should go upon her death; her individual estate which she owned in her own right was something wholly distinct; no part of it was involved in any trust whatever; nor was she in any way interested by way of control or benefit in any other trust than those declared in the wills of her father and mother which gave her the power of appointment with respect to them. When she came to make her will, here was the clear distinction which she sought to observe: First, the will recites that she holds property and estate in her own right, free from any trust, in evident contradistinction to that which she held, not in her own right, but over which, under the wills of her father and mother, she had power of appointment which she intended later on under the same testamentary act

to exercise.  The one and only object of her bounty with
respect to her individual estate was her husband, she
being childless.  Following this general devise and be-
quest of her entire individual estate to her husband, we
have the several appointments under the several wills
of father and mother, and here she makes her husband
an appointee to the estate of one-half the principal sum
over which she had power of appointment.  It would be
impossible, we think, under any fair construction of the
devise and bequest to the husband of the property and
estate which testatrix held in her own right free from
any trusts, to attach other significance to the latter ex-
pression than that the executrix intended by their use,
in the connection in which they occurred, to mark the
distinction between the property she was devising as her
own and that she was disposing of under her power of
appointment.  It would be the merest conjecture to al-
low that she had in contemplation trust that might
thereafter be created by her own act with respect to any
portion of the property owned by her in her own right,
with nothing to support it but the fact that at her death,
fifteen years afterward, it was found, that for her own
purpose, solely with a view to the enhancement in value
of the investment, she had placed for a limited period
a portion of her estate, these particular shares of stock,
in a combination which secured a controlling interest
in the stock of the corporation for a definite period.
Strictly and technically speaking these shares were not
"free from any trusts" at the date of the death.  It is
argued that in view of this fact inquiry as to the inten-
tion of the testatrix is irrelevant, and that we should
look solely to the meaning of the words employed.  This
view is a misconception of the rule.  In Woelpper's
App., 126 Pa. 562, Mr. Justice MITCHELL there states the
rule as follows:

"In the construction of wills the great general and
controlling rule is that the intent of the testator shall
prevail.  And by his intent is meant his actual intent.

It is often said, as in the case of Wiedman App., 42 Leg. Int. 338, quoted by our Brother GREEN in Hancock's App., 112 Pa. 532, and cited by appellant, 'The question in expounding a will is not what the testator means, but what is the meaning of his words.' But by this it was never intended to say that the testator's meaning when apparent can be disregarded, but, that it cannot be got at aliunde, by what he might have meant, or even what under the circumstances perhaps he would have meant, but only by what he said. The search is confined to his language, but its object is still his meaning."

So here, the object of the inquiry has been the meaning the testatrix gave the words she employed, and we have kept within the narrow limits of the rule.

We find but a single provision or expression in this will which can be construed as indicating anything short of a purpose to give to this husband the entire individual estate, short of those things specifically bequeathed to others, except the fact that the will concludes with a residuary clause. It is only necessary to say with respect to this, that the record, as we read it, discloses no residuary estate except as one would be created were the construction of the devise and bequest to the husband contended for by the appellant to prevail. The fact that there is a residuary clause can in no wise limit or detract from what had been previously given in the will; nor can such residuary clause have the effect of putting a construction on a previous clause of the will in order to create a residue.

Upon a careful study of the will from its four corners, and after no less careful consideration of the very able arguments of counsel on both sides, we are of opinion that under item three of this will, the testatrix's husband is entitled to the fund in dispute agreeably to the plain and manifest intention of the testatrix as therein expressed. The appeal is dismissed and the decree is affirmed.