409 A.2d 382

**ESTATE OF Antonio FELICE, Deceased.**

**Appeal of George E. KEARNS, Jr. and Provident National Bank, Co-Executors.**

Supreme Court of Pennsylvania.

Argued Oct. 11, 1979.

Decided Dec. 21, 1979.

Lewis B. Beatty, Jr., Media, for appellant.

Joseph F. Mulcahy, Jr., Chester, for appellee, Joseph Felice.

Donald E. Wydrzynski, Springfield, for appellant, Edna Chase.

Angelo A. DiPasqua, Media, pro se.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## ORDER

PER CURIAM.

The appeal of George E. Kearns, Jr. and the Provident National Bank as executors of the will of Antonio Felice, deceased, lodged at No. 777, January Term 1977, is hereby dismissed for the reasons stated in footnote two of the opinion filed by this Court in Estate of Antonio Felice, deceased, No. 778, January Term 1977, Appeal of Edna Chase, exceptant.

MANDERINO, J., did not participate in the consideration or decision of this case.

## OPINION OF THE COURT

NIX, Justice.

■ Antonio Felice died on March 18, 1973 and was survived by his two children and five grandchildren. He left a will naming his close friend, appellant Edna Chase, as the primary beneficiary. In relevant part, the will provided:

SECOND: I give and bequeath to my friend, EDNA CHASE, if she survives me, as her own absolute property, all my household goods, furniture, bric-a-brac, glassware, china, linen, wearing apparel, jewelry, books, pictures, paintings, automobiles, and all other personal effects, exclusive of any which may be used in a business or profession, which may be owned by me at the time of my death.

THIRD: I give and bequeath to my friend, EDNA CHASE, if she survives me, all my bonds, shares of stock, and cash.

FOURTH: I give, devise and bequeath all the rest, residue and remainder of by estate, of whatsoever kind and wheresoever situated, to my Trustees, hereinafter named, to hold such property in trust, to keep the same invested, and to distribute the income therefrom and the principal therefrom as follows:

A. Trustees shall pay the income in quarterly installments to my friend, EDNA CHASE, for her life. In addition, my Trustees shall pay to or apply for her maintenance, comfort and support so much of the principal of such trust as my Trustees, in their sole discretion, shall deem proper and necessary.

B. Trustees shall permit my friend, EDNA CHASE, full occupancy of the house in which I reside during her lifetime. Trustees shall also pay all taxes, assessments, insurance premiums, costs of repairs, and other maintenance costs incurred in connection with this house while occupied by my friend. Such payments may be made either to my friend, for amounts previously disbursed by her, or directly to the person or agency to whom due. Insurance on the house shall include both liability insurance and fire insurance up to its full appraised value. As a guide to my Trustees, it is my desire that all items necessary for the comfortable maintenance of the house for my friend be paid from this trust, including such items as utilities and the cost of renovating the interior and of landscaping the grounds in such manner as my friend, EDNA CHASE, may desire.

(1) At the death of my friend, EDNA CHASE, or at my death, should she predecease me, by Trustees shall sell such house as is then held in trust.[1]

The decedent left as the bulk of his estate a five percent certificate of deposit or savings certificate issued by Fidelity Bank in the amount of $47,000, and his dwelling and property located at 303 Smithbridge Road in Delaware County valued at $60,000. Over the objections of the executors, the

1. In paragraph (C) of the will, testator made a gift over to his grandchildren upon the death of Mrs. Chase.

Orphans' Court Division of Delaware County Court of Common Pleas held that neither the real property nor the certificate of deposit had been intended to be bequeathed or devised to Ms. Chase and were, therefore, part of the residuary from which Ms. Chase partook only a life interest. For the reasons that follow, we agree with the Orphans' Court Division that the real property is part of the residuary estate, but disagree as to the certificate of deposit and hold that it passed to Ms. Chase under the third paragraph of the will.[2]

## I. The property at 303 Smithbridge Road

Appellant Chase's claim to the real estate at 303 Smithbridge Road, Glen Mills, Concord Township, Delaware County is based upon a theory of equitable conversion resulting from an alleged exercise of an option entered into between the decedent and the Concord Excavating Co., Inc. The court below rejected this claim finding that the ultimate sale of the property was not pursuant to the option and that in any event the doctrine of equitable conversion would have been inapplicable to the facts of the instant case. We agree in both respects.

The facts stipulated to by the parties reveal that the real estate in question was owned by the testator at the time of the execution of his will on March 27, 1963. On September 2, 1970, he leased the property to Concord Excavating Co., Inc. for a period of two years at a monthly rental of One Hundred and Seventy-Five ($175.00) Dollars. The option in question was set forth in the lease and provided:

2.  A companion appeal was filed by the executors of the estate and docketed at 777 January Term, 1977. In that appeal, the executors sought to challenge the lower court's ruling that the bank savings certificate should be included in the residue. It is obvious that the executors do not have standing to raise this question and for that reason, the appeal at 777 January Term, 1977 is dismissed. *Elliott Estate,* 388 Pa. 321, 131 A.2d 357 (1957) (in the absence of a surcharge against him or a duty to protect some otherwise unrepresented trust interest requiring protection, a trustee has no standing to prosecute an appeal).

Lessor hereby grants to Lessee or its nominee an option to purchase Lessor's entire property by entering into a standard Agreement of Sale prior to August 31, 1972 for the consideration of Sixty-Thousand ($60,000.00) Dollars, provided Lessor may lease from Lessee or its nominee, his home situate on the said premises for a monthly rental of Fifty ($50.00) Dollars per month as long as he wishes.

An *addendum,* dated July 24, 1972, was executed by the parties and provided that the time in which the option could be exercised was extended to August 31, 1973, or thirty (30) days after a final court order was entered in an equity suit then pending concerning the property. Additionally, the option clause was also amended to modify the lessor's right to lease the home in the event the option was exercised:

The word 'home' is hereby amended to read 'first floor of the home'; the words 'for as long as he wishes' is hereby amended to read 'for as long as he and/or Edna Chase wishes, even to the extent of their lifetime'.

▪ Settlement for the property was held on January 31, 1975, at which time, title was conveyed to Mr. and Mrs. Zizza, the President and Secretary, respectively, of the Concord Excavating Co., Inc. in consideration for Sixty Thousand ($60,000.00) Dollars in cash. Noting that the option was not exercised by the designated optionee and that there was not compliance with other significant terms of the option, the court ruled that the ultimate sale of the real property was not pursuant to the option. The option was granted to the Concord Excavating Co., Inc. or its nominee. Under the stipulated facts, Concord did not assign its rights under the option to a nominee. No "Standard Agreement of Sale" was entered into as provided under the option. To the contrary, it is stipulated that Mr. or Mrs. Zizza telephoned the deceased's personal representative and advised that if there were no objections, they would purchase the property. There was no written exercise of the option. Finally, the mere fact that the Zizzas were officers of Concord was of no legal significance since they were acting in their individual capacity and not pursuant to an assignment from the compa-

ny. The title to the land was not conveyed to Concord but to Mr. and Mrs. Zizza as tenants by the entireties.[3] These agreed facts provide a sufficient basis for a finding that the option was not exercised and therefore concluding that the doctrine of equitable conversion has no applicability.

■ Even if were were to accept appellant's position that the real estate was sold pursuant to the option, we could not accept her conclusion that equitable conversion requires a finding that she was entitled to the proceeds from the sale. The law does not favor conversion, *Loew's Est.,* 291 Pa. 22, 139 A. 582 (1927); *Davidson v. Bright,* 267 Pa. 580, 110 A. 301 (1920) and will certainly not permit the doctrine to be used to frustrate the clearly expressed intent of a testator. *Shaffer v. Shaffer,* 354 Pa. 517, 47 A.2d 702 (1946).

The doctrine of equitable conversion is based on the rule that what is to be or ought to be shall be treated as if done already. It is a fiction, therefore, invented to sustain and carry out the intention of the testator or settlor, never to defect it. Its application requires constant watchfulness to guard against the tendency to become a formal rule de jure without regard to its real purpose and necessity. It should never be overlooked that there is no real conversion. The property remains all the time in fact realty or personalty as it was, but for the purpose of the will, so far as it may be necessary, and only so far, it is treated in contemplation of law as if it had been converted. Few testators have any knowledge of the doctrine, or any actual intent to change the nature of their property, except when and to the extent that may be required to carry out the special purpose of the will. The presumption, therefore, no matter what the form of words used, is always against conversion; and even where it is required it must be kept within the limits of actual necessity. *Yerkes v. Yerkes,* 200 Pa. 419, 423, 50 A. 186 (1901).

3. It is significant that the deed to the Zizzas was in fee simple and was not encumbered by the life interest Ms. Chase would have received had the transaction followed the terms of the option and the subsequent addendum.

■ Where there is a question as to the applicability of the doctrine of equitable conversion to the proceeds from the sale of realty, we have stated that the three indications of an intent to convert are: (1) a positive direction to sell, (2) an absolute necessity to sell in order to execute the will, or (3) such blending of realty or personalty as to show clearly that testator intended to create a fund out of both real and personal estate, and to bequeath that fund as money. *Kikel v. Kikel,* 372 Pa. 200, 202, 93 A.2d 443, 445 (1953). Using the aforementioned test, it is obvious from an examination of the instant will that the doctrine of equitable estoppel would be inappropriate in this case.

■ First, we note that in the second and third paragraphs of his will in which the decedent gave his personal property to appellant Chase, he employed the phrase, "I give and bequeath  .   .   ." In making the residuary gift, the testator changed the language and employed the phrase, "I give, *devise,* and bequeath  .   .   ." This is some evidence of a recognition on the part of the testator of the distinction between a testamentary transfer of personal property on the one hand and of realty on the other. *Dublin's Estate,* 375 Pa. 599, 101 A.2d 731 (1954).

".   .   . 'Bequeath' is properly applied to gifts by will of personal property, and not realty.  .   .   . The term 'devise' is the proper term to be used in a will to denote a gift of real property  .   .  .. It is true that the word 'devise' is sometimes used in a will interchangeably with 'bequeath,'  .   .   . nevertheless the fact that the testator  .   .   . used 'bequeath' in paragraph three and 'devise and bequeath' in paragraph four is some evidence that in paragraph three he had in contemplation only personal property, and in paragraph four he had in contemplation real property."

*Fleck v. Harmstad,* 304 Pa. 302, 308, 155 A. 875, 876 (1931). It cannot be ignored that the only real property owned by the testator at the time of his death was the parcel in question. Moreover, testator provided that Ms. Chase could have occupancy in this property during her lifetime. This

obviously negates any inference that his testamentary scheme was dependent upon the conversion of this property. There was no mandate to sell, nor absolute necessity to sell to effectuate the testamentary intent, nor was there such a blending of realty and personalty as to evidence a clear intent on the part of the testator to convert the realty into personalty as would justify the application of the doctrine of equitable conversion.

The provisions of the will express a clear intention by the testator to give to Ms. Chase the use and occupancy of the home rather than the proceeds of a sale of that property. In addition to the provision in paragraph (B) of the residuary clause providing for Ms. Chase's right to "full occupancy of the house in which I reside during her lifetime" with maintenance and other cost being borne by the estate, testator also gave a direction to sell the house in subsection (1) of paragraph (B) "[a]t the death of my friend, Edna Chase, or at my death *should she predecease me,* . . . ." It is clear from the terms of the will testator intended that the real estate form part of the residuary trust for the benefit of Edna Chase, during her lifetime and, thereafter, provided for its sale to fund the residuary trust for the benefit of his grandchildren, including their education, with ultimate distribution to them. We, therefore, affirm the ruling of the learned court below as to Ms. , hase's claim to the proceeds from the ultimate sale of this property.

## II.   The Certificate of Deposit

In deciding the question relating to the certificate of deposit, we must again note that the testator's intention is the "polestar and must prevail." *In re Houston's Estate,* 414 Pa. 579, 586, 201 A.2d 592, 595 (1965).

In *Lewis Estate,* 407 Pa. 518, 180 A.2d 919 the Court (quoting from *Burleigh Estate,* 405 Pa. 373, 376, 175 A.2d 838), recently said (page 520 of 407 Pa., page 920 of 180 A.2d): " 'It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the

language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting, of the testator's intent is for any reason uncertain: *Dinkey Estate,* 403 Pa. 179, 168 A.2d 337; *Pruner Estate,* 400 Pa. 629, 162 A.2d 626; *Wanamaker Estate,* 399 Pa. 274, 159 A.2d 201; *Hope Estate,* 398 Pa. 470, 159 A.2d 197.' "

This law is stated and reiterated in a myriad cases before and several after *Lewis Estate.* In *Walton Estate,* 409 Pa. 225, page 231, 186 A.2d 32, page 35, the Court once again pertinently said (page 231): " ' " " 'No rule regarding wills is more settled than the great General Rule that the testator's intent, if it is not unlawful, must prevail' " ' ": *Collins Estate,* 393 Pa. 519, 522, 143 A.2d 45. We reiterate what by now is hornbook law: ' "The testator's intention is the pole star in the construction of every will and that intention must be ascertained from the language and scheme of his [entire] will [together with the surrounding facts and circumstances]; *it is not what the Court thinks he might or would or should have said in the existing circumstances,* or even what the Court thinks he meant to say, but *what is the meaning of his words. Kelsey Estate,* 393 Pa. 513, 143 A.2d 42; *Britt Estate,* 369 Pa. 450, 87 A.2d 243; *Sowers Estate,* 383 Pa. 566, 119 A.2d 60; *Cannistra Estate,* 384 Pa. 605, 121 A.2d 157." *Saunders Estate,* 393 Pa. 527, 529, 143 A.2d 367. See to the same effect *Althouse Estate,* 404 Pa. 412, 172 A.2d 146 . . .' *Woodward Estate,* 407 Pa. 638, 640, 182 A.2d 732." 414 Pa. at 586–87, 201 A.2d at 595.

■ The lower court's conclusion that the certificate of deposit fell into the residue of the estate was based upon its view that the testator intended to fund the residuary trust and that "there are literally no assets, except the savings certificate, with which to provide the trust with corpus . . ." [Adjudication pg. 17, Record 48(a)]. The lower

court expressed the view that the fact that the decedent provided for a residuary clause reflects an intent not to include the certificate of deposit under the bequeath under paragraph three. However, we have previously stated that the fact a will contains a residuary clause does not limit what has been previously given under the earlier provisions of the will to create a residue. *Peterson's Estate,* 242 Pa. 330, 340, 89 A. 126 (1913).

> The fact that there is a residuary clause can in no wise limit or detract from what had been previously given in the will; nor can such residuary clause have the effect of putting a construction on a previous clause of the will in order to create a residue.

*Peterson's Est.,* 242 Pa. at 340, 89 A. at 129.

■ The clear testamentary scheme evidences a primary intent to provide for Edna Chase. She was indeed the primary object of the testator's bounty, and not the grandchildren of the testator. The will clearly reflects an intention first to provide for Ms. Chase during her lifetime and only upon her death to pass whatever remained to his grandchildren. We, therefore, do not accept the court's conclusion of an overriding intention to fund the residuary trust. To the contrary, a finding that the certificate of deposit passed directly to Ms. Chase under the bequeath made in paragraph three is more in keeping with the testator's primary concern to adequately provide for appellant during her lifetime. The case cited by appellee concerning the definition of "cash" is not apposite in the present situation.[4] In that case the Court was confronted with a bequest

4. Both appellee and the lower court relied solely upon *Boyle's Estate,* 44 D. & C. 316 (1942) as support for the contention that the certificate of deposit was not included in the gift to Ms. Chase. In that case the Court was presented with the question whether the testator's gift of "all my cash, if any," to his son encompassed his three savings accounts in separate banks. The Philadelphia County Orphans' Court held that the savings accounts were not included in the gift and limited the bequest only to cash actually in the decedent's possession at the time of his death. Even assuming *arguendo,* that the certificate of deposit presently before this Court is equivalent to the savings accounts dealt with in *Boyle's Estate,* the gift to Ms. Chase of all of testator's "bonds, shares of stock, and cash" is

solely of "cash." Here the testator's bequest to Ms. Chase was for all of his bonds, stocks, and cash, thereby intending her to receive all of his commercial paper. All of these financial documents—stocks, bonds, and the present certificate of deposit—represent liquid assets that are readily convertible into cash. It should be noted that most certificates of deposit can be redeemed prematurely within a certain time after the holder's death without penalty, thereby enhancing their liquidity. To accurately define the meaning of the third paragraph of the will, we must employ the equitable maxim of *noscitur ex sociis, qui non cognoscitur, ex se.* That is, we must examine the bequest provided in the third paragraph as a whole and not be misled by interpretations of individual words. In so doing, the inescapable conclusion is that the testator intended Ms. Chase to receive the certificate of deposit along with his other financial paper.

Nor do we believe that our interpretation defeats the decedent's intent to adequately fund the residuary trust. The Orphans' Court was of the view that the only means of funding for the residuary trust was through the certificate of deposit. This overlooks both the rental income derived from the 303 Smithbridge Road property as well as the decedent's attempt to sell that property. The First and Final Account of the Executors shows that the rental income was more than adequate to pay for the county and school taxes on the property, utilities, and insurance coverage. In addition, decedent provided for funding the residuary for the benefit of his children and grandchildren by directing in his will that the 303 Smithbridge Road property be sold after Ms. Chase's death. We believe, therefore, that

substantially broader than the narrow gift of "cash" in *Boyle's Estate.* We note that Pennsylvania long ago recognized that a certificate of deposit is subject to the same rules as are bonds, *see Commonwealth v. Crompton,* 137 Pa. 138, 147 (1890). Additionally, modern practice holds that these savings certificates are not ordinary deposits of funds as are savings or checking accounts, but are in legal effect a note or bond of the institution which issues them. *See Western Cas. & Sur. Co. v. First State Bank,* 390 S.W.2d 913, 918 (Mo.App.).

decedent made adequate provision for funding the residuary trust.

Accordingly, we modify the decree of the lower court and as modified, the decree of the Orphans' Court Division of the Court of Common Pleas of Delaware County is affirmed. Each party to bear own cost.

MANDERINO, J., did not participate in the consideration or decision of this case.