Bowman (et al., Appellant), *v.* Brown.

Argued January 6, 1959. Before JONES, C. J., MUS-MANNO, JONES, COHEN and MCBRIDE, JJ.

*Parke H. Ulrich, Jr.,* with him *Warren Y. Francis,* for appellants.

*Robert W. Honeyman,* with him *Fox, Differ & Honeyman,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, March 16, 1959:

On May 20, 1931, Aaron R. Bowman, feeling the premonitory chill of the final leveller, picked up his pen and wrote:

"I, Aaron R. Bowman of the Village of Zieglersville, Lower Frederick Township, Montgomery County, Pennsylvania, I will and bequeath all my real estate and personal property to my wife, Hulda Leister Bowman, *as long as she sees fit to remain on the premises and keep said premises in repair and pay taxes on same.* I also direct that Three hundred dollars to be paid to my wife Hulda, with interest at five per cent per annum for money advanced me in the year 1910. *In case my wife should die before me,* the estate shall be sold and divided equally between my four children, Jerome Y. Bowman, Kate Y. Kulp, wife of Harvey Kulp and Lester L. Bowman and Crosley L. Bowman, all of my real estate and personal property is located in the village of Zieglersville, Lower Frederick Township, Montgomery County, Pennsylvania. I appoint my son, Jerome Y. Bowman, my executor of my estate." (Emphasis supplied)

Ten days later, on May 30, 1931, he died. His widow, Hulda Bowman, fulfilled the conditions of the will by continuing to live on the property, keeping it in repairs, and paying taxes. Then on July 28, 1955, she joined the great majority, without, however, having anticipated the inevitable. She left no will.

Both Aaron Bowman and Hulda Bowman had been married previously, and each had left two children by their former respective spouses. Hulda's children by her former husband are Tracie Gottshalk and John Gottshalk, Aaron's children by his former wife (now deceased) were Jerome Bowman and Kate Kulp.

When Hulda Bowman died, her four offspring— Lester Bowman and Croskey Bowman by Aaron Bowman and Tracie Gottshalk and John Gottshalk by her former marriage—made a bid for the whole estate, claiming that Aaron had left all the property to their mother in fee simple, and, therefore, as her sole sur-

viving heirs, they were each entitled to one-fourth of the estate. They accordingly filed a petition for declaratory judgment in the Orphans' Court of Montgomery County, seeking such a distribution.

Jerome Bowman and Kate Kulp, Aaron's children by wife No. 1, had predeceased Hulda, but they were represented in the litigation which was to follow by Florence Brown, daughter of Jerome Bowman, and Lloyd Gilbert, devisee of Marion Gilbert, who was a daughter of Kate Kulp. Thus, Florence Brown and Lloyd Gilbert opposed the contention of the four petitioners, averring that Hulda had obtained only a life estate in Aaron's estate, and that, therefore, they, as Aaron's direct heirs, were entitled to share with Lester and Croskey in the remainder of the estate. It is obvious, of course, and not contested by anyone that, in any event, Lester Bowman and Croskey Bowman, being heirs of the full blood of both Hulda and Aaron, are due to receive one-fourth each of the estate regardless as to whether it is considered as the estate of Hulda or Aaron. The practical question in the case, therefore, is "Who is entitled to the remaining one-half?" And this question can only be answered by resolving the legal question, namely: Did Aaron will to his widow a fee simple or a life estate?

If Aaron willed his wife a fee simple title to his estate then, of course, her heirs (the petitioners) would come into possession of the entire estate. On the other hand, if Aaron's will assigned her only a life estate, then at her death the remainder was due to go to the heirs of Aaron under the intestate law, there having been no gift over or residuary clause in Aaron's will.

The Orphans' Court of Montgomery County concluded that by Aaron's will, only a life estate passed to his widow and accordingly decreed that the re-

mainder interests in Aaron's property vested in his heirs at the date of his death.* It is difficult to see how any other reasonable interpretation would be possible. If Aaron had resolved to leave all his property to his wife absolutely, he could easily have said so. While his will was not technically drawn, its phraseology shows a sufficient awareness of testamentary nomenclature that Aaron would have had no trouble in specifying that his widow was to have all his property without reservation or qualification, if that was his desire. The stark fact that he said she would have the property "so long as she sees fit to remain on the premises and keep said premises in repair and pay taxes on same" shows as clearly as language can make it that he intended to limit her enjoyment of the property. Once she moved off the premises, she was to lose every proprietary right. An ownership which hangs on so slender a thread of authority is scarcely consonant with an absolute title.

Every will, where possible, is to be read so as to give effect to all its provisions. Much rhetoric has been employed by the Courts in proclaiming that the intention of the testator shall be supreme in the interpretation of wills. The Courts have said that the intention of the testator is the polar star which guides us over the sea of construction, they have said that in

---

* The Court decreed that there vested in Hulda an intestate interest of one-third which passed to her intestate heirs, the Petitioners, they each receiving one-twelfth of the fee, and that the other two-thirds vested in Aaron's children, Lester, Croskey, Jerome and Kate Y. Kulp, they thus receiving a one-sixth interest in the property as Aaron's heirs. Thus Lester and Croskey received a one-twelfth interest in the property as heirs of Hulda and one-sixth interest in the property as heirs of Aaron, they thus receiving a total of a one-fourth interest each. The one-sixth interest of Jerome Y. Bowman and Kate Y. Kulp, as heirs of Aaron, descended to the defendants, Florence Brown and Lloyd B. Gilbert.

deciding what the testator meant we must sit in his armchair, and that his intention must be gathered from the four corners of what he has written. Assuming that Aaron Bowman was an intelligent person we can only say, while sitting in his arm chair, with the light of the polar star beating down on the four corners of our deliberations, that out of all he possessed, Aaron cut out for his wife a life estate. If he had wished her to have a fee simple estate he would have added no condition about remaining on the property, repairing it, and paying taxes. If he wished her to have a fee simple estate he would not have bequeathed her $300 with interest at 5% for money advanced to him. Under an absolute testamentary disposition of all his real estate and personal property to her, she would have gotten the $300 and everything else outrightly.

Moreover, it is to be noted that, as devoted as he probably was to Hulda, there were others who had a claim on his love and affection. The two children by his first wife were as much part of his flesh and blood as the two children he begot with Hulda. That he definitely wished to provide for these two children is evidenced by the fact that he said that in the event his wife predeceased him, the estate was to be divided equally among his four children—the two by Hulda and the two by his first wife. He said nothing in the whole will about the step-children, Tracie and John Gottshalk. If he purposed, as of course he did, to leave all his property to the children of his blood, in the event Hulda died before he died, it would be absurd to assume that he contemplated any situation whereby two of these children would be excluded from sharing in his estate and that two strangers to his blood should receive one-half of the remainder interest in his estate.

The petitioners strenuously contend that since Hulda fulfilled all the conditions laid down by the testator, her fee became indefeasible and that it now passes to her heirs. In support of this position they cite the case of *Kautz v. Kautz*, 365 Pa. 450. In that case George Kautz declared in his will: "I do hereby leave all my real estate to my wife Annie M. Kautz so long as she remains my Widow and keeps my three children together." Annie Kautz complied with the terms of the will. Prior to her death she deeded the property to her son Harold Kautz. After her death, George Kautz, one of the brothers, filed a bill of partition claiming to be a co-owner of the real estate since the will of his father devised to the widow only a life estate. The Court of Common Pleas of Westmoreland County held that the widow took a defeasible fee conditioned upon her remaining a widow and as she did not remarry, her deed to her son Harold ripened into an indefeasible fee absolute upon her death, and the partition bill was dismissed. In affirming the action of the lower Court, this Court said: "The words 'so long as she remains my widow and keeps my three children together' are not to be interpreted as cutting down her fee but as adding a condition, the breach of which would have operated to terminate her estate, thereby making the fee a defeasible one. The absence of a devise over serves to confirm this construction. The absence of a devise over, while not necessarily decisive, becomes a material consideration in a case like this in which there is nothing else in the Will to throw light on the testator's intent. And the presumption follows that a testator who made a Will did not intend to die intestate."

But the language in the Kautz will was different from that written into the will under consideration. Here, the widow was given the right to enjoy the prop-

erty "so long as she sees fit to remain" on it, keeping it in repair and paying taxes. The language clearly manifests an intent to give to Hulda the *personal* use of the property. In *Kautz,* the beneficiary could lease the property to strangers, or make whatever use she wished of the premises just so long as she did not remarry.

It is true that in the case at bar there is no gift over to Aaron's children on the death of Hulda, nor is there any remainder clause in their favor. But the fact that there was no gift over of the property upon the death of Hulda is not, as we said in the *Kautz* case, supra, "necessarily decisive". It only becomes material where "there is nothing else in the Will to throw light on the testator's intent." In the case at bar, as we have already stated, the will shows an obvious intent to benefit the testator's own children. As the testator did not make any express gift over of the property upon his wife's death, partial intestacy results with respect thereto so that the property will be distributed in accordance with the intestate laws as decreed by the court below.

It is true that the law looks with disfavor upon a finding of intestacy and presumes that the testator intended to die testate as to all his property, but such a presumption is a rebuttable one. It is rebutted in this case by the fact that the language of the will clearly provides for only a life estate to Hulda Bowman, and that intestacy would further the testator's obvious intent to benefit his own four children.

Decree affirmed; costs on appellants.