## Taubel Estate (No. 2)

*M. Paul Smith, J. Brooke Aker,* and *Harold J. Budd,* for petitioners.

*William H. Peace, 2nd,* and *John Rogers Carroll,* for respondent.

TAXIS, P. J., March 1, 1960.—The administrators of the estate of Lillian Taubel have filed this petition for declaratory judgment[1] to determine whether or not

decedent was married to Joseph Sylvester Covell at the time of her death. An answer raising questions of law was filed by Mr. Covell, asking that the petition be dismissed on the ground that under section 6 of the Uniform Declaratory Judgments Act there is a specific statutory remedy available to determine the question, namely, audit of the account of the personal representatives. The matter was argued on February 26, 1960, and briefs filed.

Since this estate has been before this court on prior occasions, a recital of that background is in order.

Lillian E. Taubel died November 1, 1958, a resident of 334 Winding Way, Merion, Montgomery County, intestate, and survived by her only child, a daughter, Andrea Badgett, also known as Andrea Taubel, age 14. The gross estate is approximately $750,000.

On November 7, 1958, Blanche E. Benner, was appointed guardian of the estate of Andrea Badgett Taubel, minor, and on May 14, 1959, the First Pennsylvania Banking and Trust Company of Philadelphia was appointed coguardian.

Various testamentary documents were lodged with the Register, together with various caveats. An alleged testamentary writing dated March 26, 1953, was offered for probate. Thereafter, the matter was certified to this court, and on May 14, 1959, after hearing, this court determined that the writing offered for probate had been effectively revoked by decedent. This finding was affirmed by the Supreme Court on December 30, 1959. See Taubel Will, 398 Pa. 19. On May 14, 1959, letters of administration were issued by the Register of Wills of Montgomery County to Thomas J. Quinlan and Montgomery County Bank and Trust Company, the present petitioners.

---

[1] The guardians of the estate of the minor daughter, Andrea Badgett Taubel, have joined in the prayer of the petition.

By letter dated June 1, 1959, counsel for Joseph Sylvester Covell, notified the administrators that his client's claim as a surviving spouse by common-law marriage was being reasserted and would be presented at audit of the account. Although originally asserted by caveat, Joseph Sylvester Covell withdrew his caveat when petitioners took the position that he would first have to prove his status as a common-law spouse before he could be heard as a caveator.

On June 12, 1959, a petition for declaratory judgment seeking to determine whether or not Joseph Sylvester Covell was the surviving spouse of decedent was filed with this court. Counsel for Mr. Covell appeared and raised legal objections and argument was held. On October 20, 1959, this court filed its opinion denying petitioners the right to a declaratory judgment on the ground that the writ of certiorari issued by the Supreme Court on June 6, 1959, and lodged with this court, "deprives this court of jurisdiction to grant a petition for declaratory judgment . . ."[2]

After the record was returned to this court by the Supreme Court, this present petition for declaratory judgment was filed. This court's prior refusal of a declaratory judgment based solely on lack of jurisdiction because of the writ of certiorari has no bearing on the merits of the present controversy.

The main force of respondent's argument seeking a dismissal of the present petition is based upon section 6 of the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, 12 PS §836.

Section 6 of that act reads in full as follows:

"Relief by declaratory judgment or decree may be granted in all civil cases where an actual controversy exists between contending parties, or where the court is satisfied that antagonistic claims are present between

---

[2] See Taubel Estate, 19 D. & C. 2d 342.

the parties involved which indicate imminent and inevitable litigation, or where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which he has a concrete interest and that there is a challenge or denial of such asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment or decree will serve to terminate the uncertainty or controversy giving rise to the proceeding. *Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy must be followed; but the mere fact than an* actual or threatened controversy is susceptible of relief through a general common law remedy, or an equitable remedy, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment or decree in any case where the other essentials to such relief are present; . . ." (Italics supplied)

Respondent's argument is as follows:

"It is clear that the Wills Act of 1947 [April 24, 1947, P. L. 89] and the Intestate Act of 1947 [April 24, 1947, P. L. 80] are designed to provide such 'a special form of remedy for a specific type of case,' and do provide complete and exclusive provisions for the determination of the right to take property from the decedent. The Orphans' Court Act of 1951 [August 10, 1951, P. L. 1163] provides complete procedural implementation for the administration of decedent's estates. Section 702 of this Act states the manner in which questions relating to administration or distribution in the estate shall be presented to and disposed of by the court. It provides: 'The court may decide or dispose of any question relating to the administration or distribution of an estate . . . and exercise any of

its powers in respect thereof upon the filing of an account or in any other appropriate proceeding. . .'

"In this case the entire matter of the administration of the estate of Lillian E. Taubel lies in the hands of the Orphans' Court and can be settled merely by following the orderly procedures of that court.

"The Uniform Declaratory Judgments Act is not designed for declarations of substantive rights involved in pending action and the decision as to such rights must be made in the first instance by the court whose power is invoked and which is competent to decide them. The statutes give a jurisdiction to the Orphans' Court and the rules promulgated pursuant thereto provide an orderly method of administering and disposing of estates of decedents. They are specifically provided by the Legislature for that purpose. Hence, under Section 6 of the Declaratory Judgments Act respondent submits that that form of procedure must be followed to the exclusion of any other remedy."

Two cases are relied upon for respondent's argument: Gerety Estate, 349 Pa. 417, and Keefer Estate, 351 Pa. 343.

Keefer Estate may be disposed of summarily as wholly inapposite for the reason that there an account had been filed and was awaiting audit. In this posture it is impossible to conceive of any problem which could not be disposed of at the audit. When administration has proceeded so far as to be awaiting audit on a pending account, it would be absurd to grant declaratory judgment at that stage of the proceedings. But that is not the case here. Apparently the personal representatives are a long way from the filing of an accounting in Taubel Estate.

In Gerety Estate, supra, the issue was the identity of the executrix and residuary legatee named in the will. In that case the register of wills probated the will and issued letters testamentary to Margaret McCarty,

whereas it was claimed that Mary McCarty was the individual to whom letters testamentary should have been granted. The court said, at page 419:

"In the case now before us the Register of Wills probated the will and issued letters testamentary to appellant. This constituted a judicial act by the Register. If, as contended by the appellant, the Register improperly issued letters to Margaret McCarty, the appropriate remedy provided by statute was to appeal to the Orphans' Court under Section 21(a) of the Register of Wills Act of [June 7,] 1917, P. L. 415, 20 PS, section 2005."

It is my opinion that Gerety Estate does not justify the broad and sweeping interpretation placed upon section 6 of the Uniform Declaratory Judgments Act by the respondent. To argue that the Wills, Intestate, and Fiduciaries Acts of 1947-1949, and the other decedents' estates laws, specifically provide that determination of heirs and the validity of a common-law marriage must be determined at audit, and only at audit, once the will is probated, an inventory filed and administration proceeded with, is without merit. An examination of these acts displays that none of them state that it is the specific and exclusive remedy for determining decedent's heirs and make no efforts at all to provide for the determination of a claim of a common-law marriage. I conclude, therefore, that to argue that "a special form of remedy for a specific type of case," is provided by these statutes mentioned above, is without merit.

More important, and more to the point, however, is that if the interpretation placed on section 6 by respondent is followed, then section 4 would be written out of the act and be a nullity. Section 4 of the Uniform Declaratory Judgments Act provides:

"*Any person interested,* as or through an executor, *administrator,* trustee, *guardian,* or other fiduciary,

creditor, devisee, legatee, heir, next of kin, or cestui que trust, in the *administration* of a trust, or *of the estate of a decedent,* an infant, lunatic, or insolvent, *may have a declaration of rights or legal relations in respect thereto—*

"(a) To *ascertain any class* of creditors, devisees, legatees, *heirs, next of kin, or others;* or

"(b) To direct the executors, administrators, or trustees to do or abstain from doing any particular act in their fiduciary capacity; or

"(c) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings": 12 PS §834 (italics supplied).

If respondent is correct in his interpretation of section 6 and the broad scope which he ascribes to it, the result would mean that in almost all of the orphans' court cases[3] the courts have erred in granting declaratory judgments, for in all of those cases the decedents' estates law of 1947-1951 set forth procedures equally applicable and, by traditional practice, such issues could possibly have been resolved at audit. That is far from the equivalent of a "special form of remedy" prescribed in section 6. The ultimate result of respondent's argument is that the remedy of declaratory judgment would be unavailable in the orphans' court. No such

---

[3] Bowman v. Brown, 394 Pa. 647; Obici Trust, 390 Pa. 180; Lifter Estate, 377 Pa. 227; Jacobs' Estate, 58 D. & C. 577; Berman's Estate, 58 D. & C. 678; Grammes Estate, 62 D. & C. 388; In re Gesumaria, 31 Northamp. 375; Kraft Trust, 77 D. & C. 308; Heath Estate, 1 Fiduc. Rep. 494; Nolan Estate, 82 D. & C. 197; Klein Estate, 3 D. & C. 2d 145; Myers Estate, 5 D. & C. 2d 624; Yoffe Estate, 7 D. & C. 2d 638; Saligman Estate, 13 D. & C. 2d 432; McMillin Estate, 15 D. & C. 2d 789; Kearney Estate, 9 Fiduc. Rep. 29; Lowell Estate, 9 Fiduc. Rep. 235; Krewson Estate, 19 D. & C. 247; Herr Estate, 9 Fiduc. Rep. 414; Zima Estate, 9 Fiduc. Rep. 676; Hunt Estate, 19 D. & C. 2d 356.

intention can be ascribed to the legislature, and no result was thus intended.

I conclude, therefore, that this court has jurisdiction to award a declaratory judgment at this time and, furthermore, in the exercise of discretion lodged in the court, believe that this type of case is eminently suited to be disposed of by way of a declaratory judgment. Not only will it assist in the administration of this estate but additional delay may be entirely harmful to this estate and to decedent's daughter. Because of the size of the estate many claims will be unresolved if a declaration of rights is not obtained at this time. At the time of the death, decedent owned real estate in Pennsylvania, New Jersey and Florida and owned oil and gas interests in Texas, Arkansas and Louisiana. Curtesy rights and community property laws in Texas and Louisiana raise serious questions in the administration of such property. In addition, termination of this claim will facilitate the administrator's decision as to the amount of advanced distributions which can be safely made to the guardian, to the minor daughter's estate, and similarly will facilitate the guardians' decisions concerning immediate problems involving the support and education of the ward.

