721 A.2d 1082

**In re ESTATE OF Kenneth C. HEWITT, Deceased.**

**Appeal of the Commonwealth of Pennsylvania, Through its Attorney General, Thomas W. Corbett, Jr.**

Supreme Court of Pennsylvania.

Argued March 9, 1998.

Decided Dec. 22, 1998.

Rita J. Cindrich, Office of Atty. Gen., for appellants.

G. Donald Gerlach, Pittsburgh, for Estate of Kenneth C. Hewitt.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### *OPINION OF THE COURT*

FLAHERTY, Chief Justice.

When a testator devises a life interest in real estate to a beneficiary who is also the co-executrix of his will, with the remainder following the life estate to be paid outright to

charities, may the executrix acting with the co-executor sell the fee interest in the real estate and be paid outright for the value of her life estate from the proceeds of the sale, or must the value of the life estate be placed in trust for the benefit of the charitable remaindermen?

Kenneth C. Hewitt was a retired senior vice-president of Mellon Bank's trust department. He devised to Mrs. Helen M. Colwell, his seventy-four year old friend and companion, a life estate in real property located at 302 Fox Chapel Road (the condominium):

> (B) I give to HELEN M. COLWELL, if she survives me by 30 days, for her life, my interest in real property located at 302 Fox Chapel Road, Pittsburgh, Pennsylvania 15238, being Apartment No. 309 in Fox Chapel Mews II; provided, however, that Mrs. Colwell shall advise my Corporate Executor of her election to occupy my apartment within 120 days following my death. Mrs. Colwell may occupy my apartment without bond and without liability for waste; provided, however, that she shall keep such apartment adequately insured, maintained and repaired and shall pay all real estate taxes, water and sewer rents, assessments, carrying charges and similar charges thereon. Upon Mrs. Colwell's death, or if she should predecease me, upon my death (i) such apartment shall be sold and the net proceeds distributed as part of my residuary estate as set forth in Article III.

Thus, the will provides that upon Mrs. Colwell's death, the condominium shall be sold and the net proceeds distributed as part of the residuary estate. The residuary estate, in turn, was devised to Mellon Bank as trustee of Mr. Hewitt's intervivos trust, which was created November 17, 1961 and last amended and restated by him January 2, 1991.

Mr. Hewitt's 1991 amendment to the trust provided that upon decedent's death, the trustee was to distribute $300,000 to Mrs. Colwell or, if she were not living, $100,000 to each of her three children, and the balance was to be distributed to the Colwell–Hewitt Unitrust. This unitrust is a separate charitable remainder trust to be created at the death of the settlor. It is funded by the balance remaining after satisfac-

tion of all amounts payable under other provisions of the trust, such as the provision mentioned earlier in which Mrs. Colwell is paid $300,000. In addition to the outright bequest of $300,000, Mrs. Colwell was to receive six percent of the market value of the unitrust for her life, and at her death, the charitable remainder unitrust was to terminate and any remaining money was to be paid outright to Princeton University, Harvard University, Mercersburg Academy, Allegheny General Hospital, and East Liberty Presbyterian Church.

Mr. Hewitt died on December 17, 1992. On January 28, 1993, pursuant to the requirement of the will set out above, Mrs. Colwell, acting as the beneficiary of the life estate, notified the corporate executor that she intended to occupy the condominium. Thereafter, on August 17, 1993, Mrs. Colwell, the co-executrix, and Mellon Bank, the corporate executor, sold the condominium in fee simple for $155,000.[1] The co-executors then distributed $76,199.55 to Mrs. Colwell on the theory that this sum represented the value of her life estate. The remainder, less taxes and other expenses, was distributed to the unitrust.

After being served with the first and final account of the testator's estate, the Commonwealth filed objections to the co-executor's commutation of Mrs. Colwell's life estate interest. The Commonwealth also objected to the payment of estate and inheritance taxes on this distribution and the calculation of the life estate factor.[2] The trial court stated:

The Attorney General argues that decedent did not intend to provide Helen M. Colwell with the option to commute and

1. Hewitt's will provides:

I give to my Executors, in addition to the authority conferred by law and without the necessity to obtaining the order of any court, the following powers: to retain any property received in kind; *to sell,* pledge, mortgage, lease for any term whatsoever, exchange and dispose of, either publicly or privately, any or all property, real, personal or mixed, at such times and for such prices and upon such terms and conditions as my Executors may determine.
Art. V. (B) (Emphasis added).

2. The value of Mrs. Colwell's life estate was calculated by multiplying the sales price of the condominium less expenses of the sale by .50839. The .50839 multiplier is not explained.

that, since she did not occupy the real estate, insure, or pay real estate taxes and other charges, she never "acceded to any interest in the Fox Chapel property and the proceeds of the sale should pass to the CRUT [charitable remainder trust] as part of the residue of the Hewitt estate, just as if she predeceased the decedent."

In short, the Commonwealth's position was that the will requires the entire net proceeds from the sale to be distributed to the testator's charitable remainder unitrust and prohibits any part of the net proceeds being distributed to Mrs. Colwell.

On October 2, 1995, the orphan's court entered an opinion and order finding that Mrs. Colwell was not entitled to an outright commutation and ordered her to place the proceeds of the sale which had been distributed her, i.e., $76,199.50, into a separate trust for her benefit during her lifetime, with herself as the trustee, pursuant to Section 6113 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. § 6113.[3] Upon her death, the remaining proceeds were to pass to the charities set out in Mr. Hewitt's will. The Commonwealth filed exceptions to this order, which were dismissed by the court en banc.

The Commonwealth then appealed to the Superior Court, which, with one judge dissenting, affirmed the order of the trial court. The majority of the Superior Court panel held that the distribution of funds from the sale, $76,199.55 into a separate trust for the use and benefit of Mrs. Colwell, with the remainder of the trust at her death to the charities, and $78,800.05 into the corpus of the unitrust was neither an abuse of discretion nor an error of law. The court found this disposition to be consistent with the testator's primary concern—to care for Mrs. Colwell and to safeguard the principal which will go to the charities at Mrs. Colwell's death. In support of this analysis, the majority cited 20 Pa.C.S. § 6113,

---

**3.** 20 Pa.C.S. § 6113 provides:

A person having a present interest in personal property, or in the proceeds of the conversion of real estate, which is not in trust, and which is subject to a future interest, shall be deemed to be a trustee of such property, and not a debtor to the remainderman, with the ordinary powers and duties of a trustee....

supra. And finally, since the testator's general intent was satisfied, the majority of the Superior Court panel determined that the alleged negative tax consequences flowing from the sale of the condominium are of no legal significance.

The dissenter in the Superior Court argued that although the will gives Mrs. Colwell a life estate in the condominium, it does not give her any interest in the proceeds from the sale, and it was error to place the proceeds from the sale in a separate trust. Further, the dissenter thought that Mrs. Colwell's only interest in the proceeds from the sale of the property is in the income generated by these proceeds, payable through the Colwell–Hewitt unitrust. Finally, he agreed with the Commonwealth's allegation that the sale of the property and the distribution to Mrs. Colwell resulted in almost $40,000 in additional taxes on the estate, and he would require Mrs. Colwell to reimburse the estate in the amount of excess taxes paid due to the sale.

We granted allocatur to examine the lower courts' treatment of the life estate.

It is axiomatic that the testator's intent is the polestar which guides our interpretation of a will, and the intent is determined from a consideration of the language within the four corners of the document, and, in an appropriate case, the facts and circumstances surrounding the will's execution. *Estate of Felice*, 487 Pa. 342, 409 A.2d 382 (Pa.1979). citing *In Re Houston's Estate*, 414 Pa. 579, 201 A.2d 592, 595 (Pa.1965).

Considering the words of the will, the testator's intent in this case is abundantly clear. He intended for Mrs. Colwell to have a life estate in his condominium, and following her death, he intended that the property would be sold with the proceeds from its sale passing through the testator's residuary estate to the unitrust, then to be paid outright to the charitable residuary beneficiaries.

At issue in this case is whether the lower courts' disposition of the matter, placing the value of Mrs. Colwell's life estate in trust and the remainder in the unitrust, was error.

■ Preliminarily, we must address the Commonwealth's assertions that Mrs. Colwell did not have a life estate because she did not live in the condominium, and that even if she did have a life estate, she had no power to sell the condominium. As to the existence of her life estate, Mrs. Colwell notified the corporate executor of her election to occupy the condominium and thereafter, she occasionally stayed there. The will required no more, and thus, she met the precondition for receipt of the life estate.

■ As to her authority to sell the life estate and the condominium itself, she was the owner of the life estate in the condominium, and she was empowered to sell her life estate as she chose:

> A life tenant is entitled to possession and enjoyment of the property as long as the estate endures. He may convey, lease or otherwise alienate his interest, but he may not disregard the rights of those who take when his life estate ends. Therefore, he is responsible for ordinary repairs and maintenance, but improvements of a permanent nature, without the acquiescence of the remaindermen, are at his own expense even though the property in thereby made more valuable.

*Ladner on Conveyancing in Pennsylvania.* §1.03 (4th ed.1979, Sup.1994). As to her authority to sell the condominium, she plainly had that authority in her role as coexecutrix of the estate, pursuant to Art. V(B), supra.

Next, we must consider whether Mrs. Colwell had a present interest in the proceeds from the sale of the condominium which would require, pursuant to the Decedents, Estates & Fiduciaries Code, 20 Pa.C.S. § 6113, that the proceeds be held in trust. Section 6113 provides, in pertinent part:

> A person having a present interest in personal property, or in the proceeds of the conversion of real estate, which is not in trust, and which is subject to a future interest, shall be deemed to be a trustee of such property, and not a debtor to the remainderman, with the ordinary powers and duties of a trustee....

The fee simple interest in the condominium was sold by the executors, and from the proceeds of this sale Mrs. Colwell was paid the value of her life estate. The question, therefore, is whether Mrs. Colwell's interest in the proceeds of the sale of her life interest is a present interest, and if it is, whether it is subject to a future interest. The answer is straightforward. Mrs. Colwell has a present interest in the value of the life estate, but this present interest is not subject to any future interest. Section 6113, therefore, does not apply. The proceeds which are subject to the future interest are the value of the fee less the value of the life estate.[4] The remaindermen have a future interest in the fee, or its value. The value of the fee, in turn, is the purchase price of the fee less the value of the life estate. The remaindermen have no interest at all in Mrs. Colwell's life estate. That estate belongs to Mrs. Colwell, and at her death it terminates; it does not pass to the remaindermen.

The Commonwealth argues, however, that because Mrs. Colwell joined and acquiesced in the sale of the fee interest in the condominium, the remainder interests accelerated and the unitrust is entitled to the immediate receipt of the entire proceeds of sale, just as if Mrs. Colwell had disclaimed her life estate interest. We disagree. Mrs. Colwell did not disclaim her interest; in fact, she asserted it. Moreover, the will provides that upon Mrs. Colwell's death, or upon the testator's death if she should predecease him, the condominium should be sold and the proceeds distributed as part of the residuary estate. Mrs. Colwell, who remains among the living, did not predecease the testator and there is no provision in the will which directs sale of the property under the circumstances of this case. The property was sold not because it was required by the will, but because it was within the discretion of the executors. Once the property was sold, the proceeds, less the value of the life estate, were properly placed in the residuary estate, not because the remainder interests accelerated, but because, in the absence of explicit direction in the will, there was no other place to deposit them.

4. Whether the life estate is correctly valued is not before us.

Finally, the Commonwealth argues that Section 6113 does not apply because the proceeds of the sale were already in trust inasmuch as the testator directed that the sale proceeds be distributed to the unitrust. This claim is without merit. The will directs that the proceeds shall be distributed to the residuary estate upon the death of Mrs. Colwell, or of the testator if Mrs. Colwell should predecease him. Mrs. Colwell did not die, and so no such sale was conducted, and such distribution is not, therefore, required. But even if it were, the result would be no different, for the executors have already distributed to the residuary estate the proceeds from the sale of the fee interest in the condominium.[5]

The order of the Superior Court is reversed. The value of the life estate as calculated by the executors is to be distributed outright to Mrs. Colwell.

Justice CAPPY files a concurring opinion.

5. Mr. Justice Castille dissents, arguing that *Estate of Felice*, 487 Pa. 342, 409 A.2d 382 (Pa.1979) controls this case and compels a holding that Ms. Colwell is not entitled to any interest in the condominium after its sale. My colleague's reliance on *Felice* is misplaced. In *Felice*, the beneficiary had only an interest in the trust and was not a separate owner of the property. The trustees owned the whole property. In this case, on the other hand, the trustees had only a remainder interest and were required to purchase the life estate if they were to exercise their power to sell the fee interest in the property prior to Mrs. Colwell's death.

Mr. Justice Nigro's dissent is premised on the notion that the case would be clearer if the beneficiary and the executor had been two different persons because the "Beneficiary would not be entitled to go to the Executor and have the Executor sell the property and give Beneficiary the monetary value of her 'life share.' Executor's instructions were at all times that when the condominium was sold, the proceeds would all fall to the residuary estate and then to the unitrust." Op. (dissent) at 1090. We disagree. If the executor agreed to merge its remainder interest with the beneficiary's life estate, sell the property, and pay the beneficiary the value of her life interest, no rule of law of which I am aware prevents that, and since the beneficiary would receive only the monetary value of what she was devised, receiving the value of the life estate does not violate the terms of the will. Further, the will does not require a different result, for the will does not instruct us as to what should happen to the proceeds of a sale on the facts of this case.

Justice CASTILLE files a dissenting opinion.

Justice NIGRO files a dissenting opinion in which Justice NEWMAN joins.

CAPPY, Justice, concurring.

I join the opinion issued by the majority today. However, I am constrained to write separately to emphasize that once it is determined that there is a vested life estate, a court cannot preclude the possessor of the life estate from receiving the proceeds from the sale of such estate.

A life estate arises when a conveyance or will expressly limits the duration of the created estate in terms of the life or lives of one or more persons, or when the will or instrument creating the interest, viewed as a whole, manifests the intent of the transferor to create an estate measured by the life or lives of one or more persons. CORNELIUS J. MOYNIHAN, INTRODUCTION TO THE LAW OF REAL PROPERTY, Chapter 2, §10 (1962); *see also* LADNER ON CONVEYANCING IN PENNSYLVANIA, §1.03(b)(Timothy J. O'Neill 4th ed.1988). A life estate has the quality of alienability, thus the life estate can be conveyed to a third person; but, the life estate holder can not convey a greater interest than he/she possesses. Generally, the life estate holder is responsible for interest on any mortgage on the property, and has a duty to pay current taxes and assessments, by a municipality or other public authority, which do not exceed the probable duration of the life estate. MOYNIHAN; LADNER.

Moreover, a life estate may be one of special limitation, subject to a condition subsequent or executory limitation. As a general rule, any restraint on alienation of the life estate is void, but a restraint in the form of forfeiture is valid.[1] MOYNIHAN, §12, supra. In determining whether the life estate holder's powers are limited, the court looks at the four corners of the will. The testator's intent is the polestar in the construction of every will. *Bowman v. Brown,* 394 Pa. 647,

1. An example of a restraint in the form of forfeiture is the following: to A, for life, so long as she remains a widow.

149 A.2d 56, 59 (Pa.1959). In interpreting a will, the court must give effect to every word and clause such that no provision will be made nugatory. *Bowman.*

The first issue in the instant case is whether based on the language of the will the testator intended to create a life estate.[2] The plain language of the will creates a life estate, which vests upon the occurrence of two events: (1) Mrs. Colwell survives the testator by thirty days; and (2) she notifies the executors of her intent to occupy the apartment within 120 days of his death. She satisfied both of these requirements, and therefore, the life estate vested.[3]

The next issue is whether the remaining language of the clause at issue, limited her interest, such that she was not entitled to the proceeds of the sale of that interest. I find that

**2.** Mr. Hewitt's will provides, in pertinent part:

(B) I give to HELEN M. COLWELL, if she survives me by 30 days, for her life, my interest in real property located at 302 Fox Chapel Road, Pittsburgh, Pennsylvania 15238, being Apartment No. 309 in Fox Chapel Mews II; provided however, that Mrs. Colwell shall advise my Corporate Executor of her election to occupy my apartment within 120 days following my death. Mrs. Colwell may occupy my apartment without bond and without liability for waste; provided, however; that she shall keep the apartment adequately insured, maintained and repaired and shall pay all real taxes, water and sewer rents, assessments, carrying charges and similar charges thereon. Upon Mrs. Colwell's death, or if she should predecease me, upon my death (i) such apartment should be sold and the net proceeds distributed as part of my residuary estate as set forth in Article III. RR at 3a–5a.

**3.** Moreover, as noted by the majority in fn. 5, the instant case is clearly distinct from *Estate of Felice,* 487 Pa. 342, 409 A.2d 382 (Pa.1979). In *Felice,* this court concluded that the testator had devised to Ms. Chase, only a life estate in the residuary trust, *not* a life estate in the real property. Thus, unlike the instant case, Ms. Chase would not have been able to alienate her life estate in the real property, since she had no interest in the real property which she could sell. This result is distinct from the instant case where Mrs. Colwell possesses a life estate in the real property. In the case *sub judice,* Mrs. Colwell could sell her life estate, and would be entitled to keep the proceeds from the sale of her life estate. Although, as Mr. Justice Nigro points out in his dissenting opinion, the value of a life estate is highly speculative, since a life estate is not, as a practical matter, a marketable commodity. But, I am not troubled by the use of the actuarial tables to value Mrs. Colwell's life estate, since a court would use such tables in determining the life estate holder's portion of responsibility for any permanent improvement to the land.

the remaining language of the clause in question, which follows the grant of the life estate, makes plain that the testator did not intend to limit Mrs. Colwell's life estate since the responsibilities to pay taxes and assessments would be the normal responsibilities of the possessor of the life estate. Therefore, I conclude that Mrs. Colwell was given a life estate in real property without any limitations on her power, and thus she had the right to sell her life estate and receive any proceeds from the sale of her life estate.[4]

Accordingly, the majority correctly determined that Ms. Colwell could receive her portion of the proceeds which represented the value of her life estate in the real property.

CASTILLE, Justice, dissenting.

The majority concludes that, when a testator devises a life interest in real estate to a beneficiary who is also the co-executrix of his will, with the real estate to be sold at the beneficiary's death and the net proceeds distributed to charities as part of the residuary estate, the beneficiary/co-executrix may act along with the co-executor to sell the fee interest in the real estate and be paid outright for the value of her life estate from the proceeds of the sale. In reaching this conclusion, I believe that the majority has overlooked this Court's own precedent. Thus, I respectfully dissent.

The relevant clause of the decedent's will provides as follows:

(B) I give to Helen M. Colwell, if she survives me by thirty days, for her life, my interest in real property located at 302 Fox Chapel Road, Pittsburgh, Pennsylvania 15238, being Apartment No. 309 in Fox Chapel Mews II; provided, however, that Mrs. Colwell shall advise my Corporate Executor of her election to occupy my apartment within 120 days following my death. Mrs. Colwell may occupy my apartment without bond and without liability for waste; provided, however, that she shall keep the apartment adequately

---

4. The possessor of a life estate and the remaindermen or executor with the power to sell may combine to sell the real property to a third party in fee simple. 14 P.L.E., Estates in Property, §72 (1959).

insured, maintained and repaired and shall pay all real estate taxes, water and sewer rents, assessments, carrying charges and similar charges thereon. Upon Mrs. Colwell's death, or if she should predecease me, upon my death (i) such apartment shall be sold and the net proceeds distributed as part of my residuary estate as set forth in Article III.

Will of Kenneth C. Hewitt, dated January 2, 1991; R.R. at 3a–5a.

Thus, under the terms of the will, Mrs. Colwell was not explicitly given any interest in the proceeds of the sale of the realty; instead, those proceeds were to be distributed to the residuary estate. In *Estate of Felice*, 487 Pa. 342, 409 A.2d 382 (1979), this Court held that where the will did not explicitly furnish the life tenant with a right to the proceeds from the sale of the property, and where it was not necessary to sell the property for the payment of estate expenses, then the life tenant was not entitled to the proceeds from the sale of the property. Instead, the proceeds became a part of the residuary estate. The will in *Felice* provided as follows:

B. Trustees shall permit my friend, EDNA CHASE, full occupancy of the house in which I reside during her lifetime. Trustees shall also pay all taxes, assessments, insurance premiums, costs or repairs, and other maintenance costs incurred in connection with this house while occupied by my friend.... (1) At the death of my friend, EDNA CHASE, or at my death, should she predecease me, by [sic] Trustees shall sell such house as is then held in trust.

*Id.* at 346, 409 A.2d at 383–84. In *Felice*, a unanimous Supreme Court, which included the author of the Majority Opinion in the instant matter, found, "[t]he provisions of the will express a clear intention by the testator to give to Ms. Chase the use and occupancy of the home rather than the proceeds of a sale of that property." *Id.* at 351, 409 A.2d at 386. Thus, the Court directed the sale proceeds to be distributed to the residuary trust.

I do not believe that the facts in *Felice* can be distinguished from the facts in the matter *sub judice* in any meaningful way,[1] nor do I believe that any compelling reasons have been advanced for overruling *Felice*.[2] Pursuant to the doctrine of *stare decisis*, I would follow *Felice* and would hold that the proceeds from the sale of the real estate must be distributed to the residuary estate. Accordingly, I respectfully dissent.

1. The majority's attempt to distinguish *Felice* in footnote five is unpersuasive. The majority states that, in *Felice*, the trustees owned the whole property, whereas here, the trustees had only a remainder interest in the property. The majority neglects to compare the precise language of the bequest in *Felice*, as set forth above, with that at issue here. In each will, the beneficiary was specifically provided a life estate in the property at issue, with no explicit provision for an interest in the proceeds of that property. Also, each will provided that the trustees were to sell the property at the death of the beneficiary and apply the proceeds to the residuary estate. Thus, in each case, the interest held by the trustees in the property was identical. The majority's attempt to characterize the trustee's interest in *Felice* as a separate "ownership" interest, as opposed to the "remainder" interest held by the trustees in this matter, finds no support in the actual language of the documents. Moreover, I do not believe such a distinction would be relevant even if it did exist. The principle of *Felice* remains that the life tenant has no interest in the proceeds of the sale of the property absent an explicit bequest to that effect, regardless of whether the interest of the remaindermen is characterized as an "ownership" interest or a "remainder" interest.

   Similarly, the attempt to distinguish *Felice* in the Concurring Opinion fails. The Concurring Opinion states that the testator in *Felice* devised a life estate in the residuary trust, not a life estate in real property. However, as set forth above, the actual language in the will stated that: "Trustees shall permit my friend, EDNA CHASE, full occupancy of the *house* in which I reside during her lifetime." This Court stated: "The provisions of the will express a clear intention by the testator to give to Ms. Chase the use and occupancy of the *home* rather than the proceeds of a sale of that property." *Id.* at 351, 409 A.2d at 386 (emphasis added).

2. To the contrary, I believe that compelling reasons exist for continuing to adhere to this Court's decision in *Felice*. As Judge Johnson's dissent in the Superior Court aptly points out, Mrs. Colwell's actions in selling the property at issue resulted in almost $40,000 in additional and unnecessary tax liabilities to the estate. This $40,000 was also a part of the corpus of the estate to which the residuary legatees were intended beneficiaries. Allowing Mrs. Colwell to retain the net proceeds from the sale while simultaneously imposing this unnecessary $40,000 expense on the estate seems anomalous at best. As *Felice* holds, all net proceeds from the sale of the property at issue should revert to the residuary estate, with the $40,000 in expenses being deducted from

NIGRO, Justice, dissenting.

I respectfully disagree with the Majority Opinion. For the following reasons I believe that Mrs. Colwell should not have succeeded directly to any proceeds from the sale of the condominium.

A life estate is a property interest for a term, the duration of which is limited to the life of the party holding it or some other designated person. BLACK'S LAW DICTIONARY (6TH ed.1990). Kenneth Hewitt bequeathed to Mrs. Colwell a life estate in his condominium, provided that she timely notified his corporate executor (Mellon Bank) that she chose to occupy it, and provided that she "keep such apartment adequately insured, maintained and repaired and ... pay all real estate taxes, water and sewer rents, assessments, carrying charges and similar charges thereon." He also gave to his executors, Mellon Bank and Helen Colwell, the power to, *inter alia,* "sell ... any and all property, real, personal or mixed, at such times and for such prices and upon such terms and conditions as my Executors may determine." The general power to sell, however, is limited concerning the condominium to circumstances where Colwell as beneficiary renounces her life interest before taking possession, defaults on the upkeep, or dies after taking possession. I believe the instant confusion over her rights in the proceeds from the condominium arises because Mrs. Colwell is both a beneficiary and an executor of Hewitt's estate.

The holder of a life estate, unless otherwise constrained, may dispose of her interest by leasing or selling the property. But she may sell or lease only the interest she has—which is limited by the duration of the designated life. Thus, if Mrs. Colwell, in her capacity as beneficiary, chose to sell her interest in the condominium, the purchaser's interest in the property would be a life estate for the duration of Mrs. Colwell's life and would expire on Mrs. Colwell's death. At that point, the *entire* condominium would, pursuant to Hewitt's testamentary directive, revert to Hewitt's residuary es-

these proceeds. Such a result, in addition to being compelled by this Court's own precedent, seems to me the far more equitable result.

tate and would "be sold and the net proceeds distributed as part of [his] residuary estate as set forth in Article III."[1]

Kenneth Hewitt's testamentary wishes were not ambiguous. It was clear that he intended Mrs. Colwell the beneficiary to be able to live in the condominium if she so chose. She was intended to use the property, but it is also eminently clear that there was never a provision giving her the right to share directly in the proceeds from the sale of the property.

Pursuant to Hewitt's wishes, there are only three scenarios under which an interest in the condominium would be sold during Colwell's lifetime. Two are described above, where Colwell the beneficiary, herself, either a) sells her life interest to a speculative buyer or b) defaults on the required maintenance, thereby curtailing her life estate. The more anticipated scenario is where Colwell the beneficiary renounces her right to the life estate by not declaring to Mellon Bank that she intends to occupy the property, and Mellon and Executor Colwell, pursuant to their powers and Hewitt's instructions, sell the entire condominium. The proceeds would fall to Hewitt's residuary estate and ultimately to the unitrust. The unitrust already provided Colwell the beneficiary with an annual income of six percent of the total value of the unitrust. Thus, on the sale of the condominium, her six percent would be an enhanced amount because the trust would be larger. Therefore, Colwell the beneficiary was permitted to "profit"

---

1. The Majority Opinion seems to have determined that, since Colwell as beneficiary has the power to alienate her life estate and Colwell as executor has the power to sell the entire property in fee, the two powers combined means that the entire property may be sold with Colwell the beneficiary still entitled to her share of the proceeds, the life estate. This is simply not true. Colwell the beneficiary may alienate only her life estate. When she dies, the buyer's rights completely extinguish and the entire property goes to the remaindermen. Similarly, Colwell the executor has the power to sell the entire property, but so long as Colwell the beneficiary has a life interest, the property may only be sold subject to the life interest. In other words, the buyer in fee owns nothing until Colwell the beneficiary dies. Only if Colwell the beneficiary gives up her life estate may the executor sell the property free of the life interest. If Colwell the beneficiary does give up her life interest, she also gives up her right to the proceeds. Neither party may override the rights and responsibilities of the other, nor may they, jointly, agree to override the testator's intent.

from not occupying the condominium in only one of two ways. She could seek to sell her life interest if she could find a willing buyer for an interest with an unknown date of extinction or, upon an outright sale of the condominium, she could realize additional income from the enlarged unitrust.

I believe that what serves to confuse the issue in this case is that Mrs. Colwell was designated not only the beneficiary of the life estate but also co-executrix (along with Mellon Bank) of the estate. Had the two positions held by Mrs. Colwell been held, instead, by two different individuals ("Beneficiary" and "Executor"), I believe the testator's intent would not have been so misinterpreted.[2] Specifically, the grantee of the life estate (Beneficiary) would have been required to give notice to Executor/Mellon Bank of her intent to occupy the condominium. Beneficiary would then be the life tenant. Had Beneficiary subsequently decided to sell her interest, she could have sold only what she had—a life estate. Beneficiary would be entitled to whatever price she could get for such a speculative property interest. Beneficiary would not be entitled to go to Executor and have Executor sell the property and give Beneficiary the monetary value of her "life share." Executor's instructions were at all times that when the condominium was sold, the proceeds would *all* fall to the residuary estate and then to the unitrust.

In the alternative, had Beneficiary chosen to decline the life estate, the condominium would have been sold by Mellon and Executor for full value, all of which would have passed to the residuary estate. In this instance, the proceeds would have

**2.** I pose this hypothetical merely to illustrate the difficulty the Beneficiary would have effecting the same result arrived at by the Majority had she dealt at arm's length with an independent Executor. My dissent, however, does not, as the Majority's footnote 5 suggests, rest on this paradigm, but on the notion that the Executor abrogated her fiduciary duties when she circumvented the testator's intent. Portioning out the monetary value of the life estate for the life tenant's use was never expressed as part of Hewitt's testamentary intent. In response to the Majority's footnote 5 hypothetical, it would therefore have been a breach of any Executor's duty to agree to "merge [the] remainder interest with the ... life estate"; the rule of law which prevents it, as Justice Castille's dissent properly notes, is fidelity to the testator's intent.

been put into Hewitt's charitable remainder unitrust and Beneficiary would have drawn six percent of the market value of that trust each year for the rest of her life, any remaining money being distributed to Hewitt's charities after Beneficiary died.

Under either scenario, Mellon Bank and Executor would have properly fulfilled Hewitt's testamentary intent. It is only because Executor and Beneficiary happen to be the same person that permission for Beneficiary to partake outright in the proceeds from Executor's sale of the condominium was effected. Had Executor and Beneficiary dealt at arm's length, Beneficiary would never have directly realized a share of the proceeds, for that was not Hewitt's intent.

Hewitt intended her to receive $300,000 plus six percent of the unitrust for life. Her interest in the condominium was to be realized either as a life estate for her use *or*, should she decline to "occupy" it, her interest in the condominium would have been realized when six percent of the unitrust, augmented by the sale proceeds, yielded more income to her each year.

Both the lower courts and the Majority improperly allow Colwell access to and use of the lump sum life estate share of the proceeds, $76,199.55.

Under the scenario approved by the Majority, Mrs. Colwell receives $300,000 plus the actuarial value of her share of the proceeds of the condominium plus six percent per year of the grander unitrust for life. Thus, Colwell gets outright control over the lump sum $76,199.55. This is not what Hewitt's testamentary wishes express and, had Executor been anyone other than Beneficiary, I believe it would not have been permitted.

Similarly, placing the $76,199.55 in proceeds in a separate trust as prescribed by the lower courts does not redress the departure from Hewitt's wishes. Under the lower courts' scenario, Colwell wears yet a third hat as "Trustee" of this separate trust as well as being its income beneficiary. As Trustee, she has the power and authority to deplete the trust for her own benefit during her lifetime, thereby enabling her

to succeed to more than Hewitt intended since she is not restricted to an income of six percent of its annual value.

I therefore agree with Judge Johnson's dissent to the Superior Court opinion. Pursuant to Hewitt's testamentary intent, Colwell improperly succeeded to the entire $76,199.55. Her only interest in the proceeds from the sale of the property is the six percent income she will draw from the unitrust where the entire proceeds properly belong.

Justice NEWMAN joins the dissenting opinion.